JACKSON W. SILLS *et al., Appellants,* v. JOHN W. SORENSON, *Defendant,* FIREMEN'S FUND INDEMNITY COMPANY, *Respondent.*[1]

[1]Reported in 73 P. (2d) 798.

*Vanderveer & Bassett* and *Anson B. Jackson, Jr.,* for appellants.

*Whittemore & Truscott,* for respondent.

STEINERT, C. J.—This is an appeal from a judgment dismissing a writ of garnishment based on a prior judgment rendered in an action brought by plaintiffs against the principal defendant to recover damages for personal injuries sustained in an automobile accident.

The facts out of which the original controversy arose are as follows: On and prior to February 1, 1936, appellant Jackson W. Sills was shop foreman in the employ of Frayn Printing Company of Seattle. At the same time, defendant John W. Sorenson worked as a printer in the shop, under the supervision of Sills. Both men had been engaged in the printing trade for many years and were dependent for their livelihood upon that occupation.

On August 3, 1935, Sorenson had procured from Firemen's Fund Indemnity Company, respondent herein, a liability policy covering a Plymouth coupe then owned by him. The policy specified on its face that "The Named Assured's business or occupation is Employee—Frayn Printing Co."

By the terms of the policy, respondent agreed to pay, within specified limits, any loss by reason of the liability imposed by law upon the assured, Sorenson, arising out of bodily injuries received by any person except those designated in the subsequent "Exclusions" clause.

The exclusions clause, in so far as it is material here, reads as follows:

"PROVIDED ALSO . . ·. (2) that the Company shall not be liable on account of bodily injuries or death suffered by *any employee of the Assured* . . . injured *in the course of employment in the business of the Assured.* . . ." (Italics ours.)

Thus, according to the terms of the policy, respondent agreed to pay certain losses sustained by the assured Sorenson, by reason of bodily injuries received by any third person other than an employee of Sorenson injured in the course of his employment in the business of the assured. The question here presented is whether Sills comes within the designation of an employee of Sorenson; and, if so, whether he was injured in the course of his employment "in the business" of Sorenson. It is conceded that, if for any reason Sills does not come within that designation in the exclusions clause, respondent would be liable under the terms of its policy issued to Sorenson and would be subject to garnishment on the judgment obtained by Sills.

It appears from the evidence that, a short time prior to February 1, 1936, Sorenson had been sued upon a dental bill by a resident of Marysville, which is about thirty-five miles north of Seattle. Following the commencement of that action, a writ of garnishment was issued against Sorenson's employer, Frayn Printing Company. Sorenson was anxious to settle the controversy, obtain a dismissal of the garnishment, and have his wages released. For some reason or other, he desired to have a witness present at the time of his settlement with the dentist.

Accordingly, on the morning of February 1, which was Saturday and a half-holiday, Sorenson requested Sills, who was the superintendent of the shop, to

accompany him, in Sorenson's car, to Marysville that afternoon for the purpose of witnessing the payment of the dental bill. Sills was at first reluctant to go, but, on Sorenson's offer to pay him two dollars to make the trip, agreed to do so. The understanding was that Sorenson was to drive his Plymouth coupe, with Sills accompanying him, to Marysville, and, after the transaction there had been completed, to bring Sills back to Seattle. The evidence discloses that Sills had never, prior to that occasion, been in the employ of Sorenson, nor performed any services whatever for him for compensation.

After Sorenson had paid Sills the sum of two dollars, as agreed, the trip was made as contemplated, and the dental bill was paid and receipted for in Sills' presence.

On the return trip, and just before reaching Seattle, the automobile driven by Sorenson ran off the highway and struck a telephone pole, as a result of which Sills was severely injured. Sills subsequently brought an action for damages against Sorenson upon the charge that his injuries had been caused by reason of Sorenson's reckless and negligent driving, continued after repeated remonstrances by Sills.

Much of respondent's argument in its brief is predicated upon the following allegations contained in Sills' complaint against Sorenson:

"That, on the 1st day of February, 1936, defendant [Sorenson] . . . *employed* said plaintiff Sills for said purpose, paying to said plaintiff Sills the sum of $2.00 therefor." (Italics ours.)

And,

"That, pursuant to said request and *employment* said plaintiff Sills did accompany the defendant in his said automobile to said Town of Marysville and did there witness the payment by defendant of said bill; . . ." (Italics ours.)

It is contended by respondent that these allegations in the complaint are to be taken as admissions, or at least as proof, in the garnishment proceeding, that Sills was an "employee" of Sorenson and, therefore, within the exclusions clause of the policy.

It is apparent that these allegations, if sustained by the evidence, would avoid the interdiction of the host and guest statute passed in 1933, Rem. Rev. Stat., § 6297-1 [P. C. § 196-57a] (Laws of 1933, chapter 18, p. 145, § 1.) However, we are not now concerned with the purpose of these allegations, nor is the question of their truth or falsity a present issue. We are concerned only with their legal effect in the determination of the nature of the "employment" undertaken by Sills.

Upon the commencement of the original action by Sills, Sorenson tendered the defense to respondent. The defense was accepted, on condition, however, that all rights under the policy were fully reserved by both parties. Upon trial of the action, by jury, a verdict was returned for Sills, upon which a judgment was entered. That judgment has become final and binding upon the parties to the main action.

Immediately upon entry of the judgment, Sills, as plaintiff, sued out a writ of garnishment against the respondent insurance company. Respondent answered by general denial. After issues had been joined in the garnishment proceeding, a hearing was had before the court, pursuant to which the court made findings and concluded therefrom that, at the time of sustaining his injuries, Sills was *an employee of Sorenson* and was injured in the course of his employment *in the business* of Sorenson, and that, therefore, respondent was relieved of liability by the terms of the exclusions clause of the policy. From a judgment on the findings and conclusions, this appeal was taken.

It will readily be seen that, to give controlling effect to the exclusions clause so as to defeat recovery herein by Sills, three things are necessary: (1) Sills must have been an *employee* of Sorenson at the time of the accident; (2) he must have been injured in the course of his employment, and (3) his employment must have been *in the business* of Sorenson. If any one or more of these elements be lacking, the respondent insurance company must be held liable under its policy.

■ We proceed from the well-established and oft-repeated principle in the law of insurance that, if the policy be so drawn as to require interpretation and its language is fairly susceptible of different conclusions, that construction which is the most favorable to the assured in affording him protection under the policy will be adopted. *Guaranty Trust Co. v. Continental Life Ins. Co.,* 159 Wash. 683, 688, 294 Pac. 585; *Braley Motor Co. v. Northwest Casualty Co.,* 184 Wash. 47, 52, 49 P. (2d) 911.

■■ We take up first, then, the question whether Sills was an employee of Sorenson, as that term is usually understood. It will be borne in mind that Sorenson was himself an employee of Frayn Printing Company and was so designated in the policy; and further, that Sills was the superintendent over Sorenson and had never theretofore been employed in any manner by Sorenson.

Both parties concede, and likewise proceed upon the theory, that Sills was actually paid the sum of two dollars for the service to be rendered by him on the trip. It is obvious, therefore, that Sills was not a passenger for hire, a guest, or a joint adventurer.

What, then, was Sills' relationship to Sorenson? Respondent contends that he was an employee in the legal sense of a servant. Appellant contends that his

employment was that of an independent contractor. It appears certain that he must fall within one or the other of these two classifications.

The word "employee," though more euphonious, has the same legal significance as the word "servant." It imports some sort of continuous service rendered for wages or salary and subject to the direction of the employer or master as to how the work shall be done.

According to the accepted definition in this state, an independent contractor is one who, while rendering service in the course of an independent occupation, represents the will of his employer only as to the result of the work, and not as to the manner or means by which it is accomplished. The test by which it is determined whether the relation is that of employer and employee or that of independent contractor is whether or not the employer retained the right, or had the right under the contract, to control the mode or manner in which the work was to be done. *Simila v. Northwestern Imp. Co.*, 73 Wash. 285, 131 Pac. 831; *Johnston v. Seattle Taxicab & Transfer Co.*, 85 Wash. 551, 148 Pac. 900; *Leech v. Sultan R. & Timber Co.*, 161 Wash. 426, 297 Pac. 203; *Hollingsworth v. Robe Lumber Co.*, 182 Wash. 74, 45 P. (2d) 614. All of these cases emphasize the point that the chief, and most decisive, circumstance in determining whether the relationship is that of employer and employee or that of independent contractor is the right of control over the work or thing to be done.

Applying this rule and test to the facts of this case, and having in mind, also, the "rule of favor" to the insured, we think that Sills' employment must be held to be that of an independent contractor and not that of a servant or conventional employee. Sills represented the will of Sorenson only as to the ultimate result to be attained, and not as to the manner or means of

attaining it. Sorenson was concerned only in having the transaction witnessed, and not with the manner in which Sills was to exercise his faculties in that regard. The service rendered by Sills was analogous to that of a notary public.

What Sorenson did in the way of paying the bill and what Sills was to do in witnessing it, though done contemporaneously, were nevertheless distinct and independent of each other. Had Sorenson concluded the transaction by refusing to pay the dentist, Sills, having witnessed the refusal, would have fully performed his agreement. While the term "independent contractor" may appear to be a rather high-sounding appellation to be used in connection with so small an incident, we are here concerned with the legal status involved rather than with the name by which it is designated.

Having thus concluded that Sills was not an employee of Sorenson, within the terms of the policy, it is immaterial whether or not he was, at the time, "in the course of employment," because that phrase is adjunctive to, and qualifies, the preceding noun "employee."

The third element necessary to relieve respondent from liability under its policy is comprehended in the phrase "in the business of the Assured [Sorenson]."

The word "business" is quite flexible in its usage and application. In a general sense, it refers to any matter or affair which requires one's attention or diligence. When used distinctively or with particularity, it has reference to the particular occupation or employment in which a person is habitually or regularly engaged for the purpose of a livelihood or gain.

It may be noted that the language of the exclusions clause of the policy does not refer to employment *on*

business for the assured, but *"in the business"* of the assured. In other words, the language is not so general as to include every matter or affair requiring Sorenson's attention, but is to be taken as referring to the particular occupation or employment in which Sorenson was customarily engaged. His "business," as designated in the policy, was his employment in the printing shop. The particular transaction between Sorenson and the dentist, which Sills was called upon to witness, was not connected with Sorenson's business as a printer, but was simply a casual and sporadic affair of a personal nature.

Considering the phrase "in the business of the Assured" in the light of its context and with regard to its generally accepted meaning when used in commercial transactions or contractual relations, and applying the principle of the "rule of favor to the insured," we believe that the term, as used in the policy, should be interpreted to have reference to the habitual or customary occupation in which Sorenson was employed, and not extended to include the casual transaction in which he was for the time engaged. We believe that the intent of the exclusions clause was to exclude from the coverage of the policy such hazards only as would be incident to the use of the automobile in some trade, business or employment conducted or followed by the assured, but not to exclude the hazard incident to casual use which was in no way connected with a regular business or employment.

The judgment is reversed, with direction to the trial court to enter in its place a judgment for appellant.

MILLARD, MAIN, GERAGHTY, ROBINSON, and SIMPSON, JJ., concur.

BEALS, J. (dissenting)—I cannot follow the majority in holding that Mr. Sills stood in the relation of an

independent contractor to Mr. Sorenson. "The ulti-
mate result to be obtained" consisted only of witness-
ing the closing of the transaction between Mr. Soren-
son and his creditor. The witnessing by Mr. Sills of
whatever was done was no more distinct from or inde-
pendent of Mr. Sorenson's actions than the act of any
employee or servant is independent of the authority
which directs that the act be performed. Mr. Sills was
employed to accompany Mr. Sorenson merely to act
as a witness of what might transpire between his em-
ployer and a third party. In my opinion, any sugges-
tion of independence of contract was excluded by the
terms of the agreement. By the terms of the agree-
ment between the parties, Mr. Sills was to be trans-
ported to and from Marysville. The accident occurred
on the way home, and manifestly Mr. Sills was in-
jured in the course of his employment.

While the words "in the business of the assured"
may not be, as stated by the majority, "so general as
to include every matter or affair requiring Sorenson's
attention," it seems to me that they clearly cover the
relation which existed in the case at bar. While, in a
broad sense, Mr. Sorenson may have had only one
business, which was that of working as a printer for
Frayn Printing Company, it seems to me clear that a
man may have more than one business. Of course, in
his capacity as a printer, Mr. Sorenson employed no
one, but this would not prevent his entrance into out-
side activities, in the course of which he might em-
ploy many persons.

An assured may have several businesses. He may
own a store for the sale of general merchandise, a mill
for the manufacture of lumber, and a coal mine. Any
business in which an assured may engage, be it small
or large, becomes for the time "the business of the as-
sured," within the meaning of the policy. It seems to

me evident that the insurer desired to exclude from the risks which he assumed claims on the part of employees of the assured.

The majority limit the application of the policy to "the habitual or customary occupation" of the assured. This limitation appears to me to be unreasonable and inconsistent with the language of the policy. An employment is an employment, whether it is to last an hour, a month, or a year; and when the relationship which existed between Messrs. Sills and Sorenson was definitely established by agreement of the parties— and in the case at bar the contract, whatever it be called, was established positively and beyond question —that employment became the business of the assured, within the terms of the policy. The rule adopted by the majority leaves the matter open for different conclusions in cases which to me seem to be absolutely alike in principle.

For the reasons assigned, I dissent from the conclusion reached by the majority.

HOLCOMB and BLAKE, JJ., concur with BEALS, J.