[No. 27733. Department One. April 2, 1940.]

TRACY M. KANE, *Respondent*, v. THE ORDER OF UNITED COMMERCIAL TRAVELERS OF AMERICA, *Appellant*.[1]

[1]Reported in 100 P. (2d) 1036.

*Skeel, McKelvy, Henke, Evenson & Uhlmann,* for appellant.

*Gordon D. Eveland* and *Clarence J. Coleman,* for respondent.

SIMPSON, J.—This is an action brought by the beneficiary of an insurance certificate issued by defendant to Thomas E. Kane. The case was tried to a jury. At the conclusion of the trial, the defendant challenged the sufficiency of the evidence to sustain any verdict or judgment for plaintiff and moved for a directed verdict in favor of defendant. The court denied the motion.

The jury returned a verdict for plaintiff. Defendant presented motions for judgment notwithstanding the verdict or for a new trial, which were denied. Judgment was entered upon the verdict, and defendant has appealed.

The assignments of error are (a) failure to grant the motion for a directed verdict; (b) failure to grant a judgment n. o. v. or a new trial; (c) in the admission of certain testimony; and (d) in the giving of two instructions.

The facts favorable to respondent are as follows: Appellant, an Ohio corporation, is composed of various lodges, called "Councils," located in various states of the Union, including Washington. It issues certificates of insurance to indemnify its members for disability or death resulting from accidental means.

Thomas E. Kane was a member of Everett Council No. 487 of Everett, Washington. March 20, 1922, defendant issued to him an insurance certificate under the terms of which his beneficiary, respondent herein, was entitled to receive the sum of five thousand dollars in the event of the accidental death of the insured. Respondent waived all claim for recovery in excess of three thousand dollars.

The portions of the certificate relevant to the questions involved in this appeal are as follows:

"ART. IV, Sec. 4. . . . Class A. Insured members shall be indemnified in accordance with the terms

hereinafter set out in this Article, against the results of bodily injury hereinafter mentioned, effected solely through external, violent and accidental means, herein termed the accident, which shall be occasioned by the said accident alone and independent of all other causes.

. . .

"ART. IV, Sec. 9. . . . Nor shall the Order be liable to any person for any benefit for death, disability, loss of time, or any of the losses specified in Items 3 to 10 of Sections 4 and 5 of this Article resulting from war or riot, riding or driving a motor vehicle in a race, fighting, violation of any law, intentionally self-inflicted injuries (fatal or otherwise), self-destruction (while sane or insane), murder or disappearance, injuries intentionally inflicted by others, resulting in death, or from voluntary exposure to unnecessary danger or to over-exertion (unless in an effort to save human life), or medical mechanical or surgical treatment (except where the surgical treatment is made necessary by the accident), nor for any accident (fatal or otherwise), to a member who is in any degree under the influence of or in consequence of having been under the influence of intoxicating liquor, alcohol or narcotics.

"Nor shall the Order be liable to any person for any benefits for death disability, loss of time, or any of the losses specified in Items 3 to 10, inclusive of Sections 4 and 5 of this Article, by reason of any of the following conditions, whether caused by accidental means or not, to-wit: Appendicitis, fits, epilepsy, mental infirmity, ivy poisoning, ptomaine poisoning, or other poisoning, bite or sting of an insect or any infection (unless the infection is introduced into, by or through an open wound, which open wound must be caused by external, violent and accidental means and be visible to the unaided eye), inhaling of manufactured or natural gas, carbon monoxide poisoning, hydrogen or any other form of gas causing asphyxiation (voluntary or involuntary, conscious or unconscious), venereal disease, cerebral hemorrhage, menigeal hemorrhage, spinal hemorrhage, heat prostration, sun stroke or sunburn."

The insured received injuries from an accidental fall which aggravated an existing hernia and necessitated a surgical operation January 16, 1937. He made a good recovery until January 21st, at which time he contracted lobar pneumonia, from which he died January 26, 1937.

Appellant contends that no recovery can be had under the provisions of the benefit certificate for the reason that the terminal cause of the insured's death was lobar pneumonia; and that, pneumonia being an infection, it is excluded under the exemption clause in the certificate. Appellant maintains that the provision in its certificate which provides that it will not be liable for any infection is unambiguous, and that the meaning of the word "infection" must be determined from a medical standpoint.

The testimony of the physicians showed that the germs which produce pneumonia are found in the respiratory passage of otherwise well individuals; that the performance of an operation and the giving of any general anaesthetic tends to lower bodily resistance to any infectious agent; and that the insured died from the effects of lobar pneumonia contracted during the time he was recovering from the operation for hernia.

Respondent asserts that the word "infection" must be construed according to the meaning normally ascribed to it by a layman, and argues that "pneumonia" is not within the popular conception of what that word connotes.

Unless we can agree with respondent in this respect to the extent that this question was one properly to be submitted to the jury, it must be conceded that she cannot recover in this action.

It is the established rule in this and many other states that, where a provision of a policy of insurance is capable of two meanings, or is fairly susceptible of

two constructions, that meaning and construction most favorable to the insured must be applied, even though the insurer may have intended another meaning; because the insurer, and not the insured, is the author of the instrument. *Fenton v. Poston,* 114 Wash. 217, 195 Pac. 31; *Metropolitan Club v. Massachusetts B. & I. Co.,* 127 Wash. 320, 220 Pac. 818; *Guaranty Trust Co. v. Continental Life Ins. Co.,* 159 Wash. 683, 294 Pac. 585; *National Bank of Tacoma v. Aetna Casualty & Surety Co.,* 161 Wash. 239, 296 Pac. 831; *Dowell, Inc. v. United Pacific Casualty Ins. Co.,* 191 Wash. 666, 72 P. (2d) 296; *Sills v. Sorenson,* 192 Wash. 318, 73 P. (2d) 798; 12 Am. Jur., Contracts, § 252.

On the other hand, that rule is applied only where there is an unexplained ambiguity in the contract. *Miller v. Penn Mutual Life Ins. Co.,* 189 Wash. 269, 64 P. (2d) 1050.

Does the certificate in question admit of two constructions? That is, does it carry one meaning to members of the medical profession, and another to the minds of laymen?

We take the view that it does. For the purposes here under consideration, the question as to whether lobar pneumonia is infectious must be considered in the light of the ordinary conception and understanding of that disease, and not in the light of scientific or technical meanings.

█ Policies of insurance are prepared by the insurer and sold or issued to individual men and women who consider and understand the words and phrases so employed in their popular sense. Policy holders are not compelled to investigate the technical meaning of the language used in insurance policies. They are justified in depending upon the popular or general meaning of the words and phrases used in the policies.

"The terms used in an accident insurance policy should be understood in their plain, ordinary, and popular sense, rather than in a philosophical or scientific sense." 1 C. J. 417, § 44.

In *Port Blakely Mill Co. v. Springfield Fire & Marine Ins. Co.*, 59 Wash. 501, 110 Pac. 36, 28 L. R. A. (N. S.) 596, this court stated:

"The rule of construction must be that the word used is to be construed in its ordinary signification. The legal signification may have been understood by the insurance company when it employed this word, but in order to avail itself of such legal signification, it must appear that the other contracting party also understood it."

In *Guaranty Trust* Co. *v. Continental Life Ins. Co.*, *supra,* we said:

"Again the principle should apply that, if two or more constructions can be placed upon a single word such as 'in,' that construction should be adopted most favorable to the insured. The word 'in' is ordinarily accepted and used as an equivalent to the word 'on'."

The rule to be followed in cases of this nature is found in *Robinson v. Commonwealth Casualty Co.*, 224 Mo. App. 969, 27 S. W. (2d) 49:

"If words used in a policy are susceptible of two meanings, that which is most favorable to the insured will be allowed by the court. [*Block v. Ins. Co.*, 316 Mo. 278.] If there is one · understanding from the medical standpoint to be gleaned from the policy and another from the layman's standpoint, the latter will control, providing the layman's understanding of the meaning is the more favorable to the insured, unless it clearly appears from the policy that the language therein is used in a medical sense. [*Berlau v. Met. Life Ins. Co.*, No. 16832, decided by this court. . . . [24 S. W. (2d) 686.].]"

Of like import are *Farmer v. Railway Mail Ass'n*, 227 Mo. App. 1082, 57 S. W. (2d) 744, and *Bolich v.*

*Provident Life & Acc. Ins. Co.,* 205 N. C. 43, 169 S. E. 826.

In *Order of Railway Conductors v. Gregory,* 91 S. W. (2d) (Tex. Civ. App.) 1139, the Texas court of civil appeals had under consideration a certificate quite similar to the one in this case. In speaking of the meaning of the word "infection," the court used the following language:

"Under like situations the courts have adopted the ordinary meaning of words and terms as they are commonly understood by the average laymen in preference to a technical meaning as understood by members of a profession or by a lexicographer. In the very interesting case of *International Travelers' Ass'n v. Francis,* 119 Tex. 1, 23 S. W. (2d) 282, 286, Chief Justice Cureton, in considering whether the death of Francis, which was occasioned by the extraction of a tooth resulting in an infection producing Ludwig's angina, was an accidental death, quoted the following with approval:

" 'But our point of view in fixing the meaning of this contract must not be that of the scientist. It must be that of the average man.'

" 'The words employed in a contract of insurance are to be taken and understood in their plain, ordinary, usual and popular sense, rather than according to the meaning given them by lexicographers, or persons skilled in the niceties of language. . . .' 32 C. J. pp. 1150, 1151, § 261.

" 'The rule is practically universal that, when the language of an accident policy is susceptible of different constructions, that one must be adopted which is most beneficial to the insured.' *Continental Cas. Co. v. Colvin,* 77 Kan. 561, 95 P. 565, 568.

"Appellee contends, correctly we think, that the 'ordinary conception of the word "infection" to a layman implies the invasion of bacteria from the air into an opening or abrasion on the surface of the skin or body causing toxic or blood poisoning.' We find that the courts have adopted this ordinary meaning or understanding of the word.

" 'Whatever medical understanding of the word "in-

fection" may be, laymen's understanding of the word is that it is caused by any noxious substance inserted into the flesh, whether substance be germ or poison. *Dickey v. Western Tablet Co.*, 218 Mo. App. 253, 267 S. W. 431, 433.' 4 Words and Phrases, Third Series, p. 266."

It must be presumed, therefore, that the parties to this certificate of insurance intended the terms and the words of the policy as they are ordinarily understood by the average man.

Under the rule which requires us to interpret the certificate most liberally in favor of the insured, and as popularly considered and understood, we cannot avoid the conclusion that, in providing compensation for an accidental death, the parties did not intend to classify pneumonia as an infection.

■ Appellant urges that its constitution eliminates the doctrine of proximate cause. The constitution states that the order will not be liable where death results from any infection except as specifically mentioned in the constitution, whether caused by accidental means or not. The following cases are cited as sustaining that authority: *Order of United Commercial Travelers v. Edwards*, 51 F. (2d) 187; *Flood v. Order of United Commercial Travelers*, 276 Mich. 648, 268 N. W. 767; and *Order of United Commercial Travelers v. Dobbs*, 204 S. W. (Tex. Civ. App.) 468.

An examination of those cases discloses that, while the policies under consideration were like the one before us, there was no controversy over the meaning of terms or words used. In the first two cases, it was not denied that the insured died from the effects of infection. In the last case, the policy specifically provided that the insurer was exempt from liability should death be caused by cerebral hemorrhage, the agency which, in fact, did produce the death of the insured.

The rule to be applied is well stated by Judge Sanborn in *Western Commercial Travelers' Ass'n v. Smith,* 85 Fed. 401, 40 L. R. A. 653, in the following language:

"If the death was caused by bodily injuries effected by external, violent, and accidental means alone, the association was liable to pay the promised indemnity. If the death was caused by a disease which was not the result of any bodily infirmity or disease in existence at the time of the accident, but which was itself caused by the external, violent, and accidental means which produced the bodily injury, the association was equally liable to pay the indemnity. In such a case, the disease is an effect of the accident, the incidental means produced and used by the original moving cause to bring about its fatal effect, a mere link in the chain of causation between the accident and the death, and the death is attributable, not to the disease, but to the causa causans, to the accident alone."

Of like import are *Isitt v. Railway Passengers Assurance Co.,* 22 Q. B. D. (Eng.) 504, and *In re Etherington & Lancashire & Yorkshire Acc. Ins. Co.* [1909], 1 K. B. (Eng.) 591.

Moreover, the conclusion at which we have arrived concerning the interpretation of the certificate as it relates to infectious diseases fully answers the argument of appellant. Having found that lobar pneumonia may be considered as a noninfectious disease, it follows that the exemptions contained in the constitution do not apply.

We hold, therefore, that, when death results from disease which follows as a natural though not necessary consequence of an accidental injury, it is within the terms of the accident certificate, the death being deemed the proximate result, not of the disease as an independent cause, but of the injury.

The next error urged relates to the admission of testimony given by the doctors. They testified that, while pneumonia was an infectious disease from a

medical standpoint, laymen did not consider it to be an infection; that laymen thought of infection as occurring when microbes entered an open wound in the skin, thereby setting up an infection.

It is clear that the word "infection" has a technical meaning susceptible of more than one interpretation; that is, it has a definite meaning as understood by members of the medical profession and an entirely different meaning to most of those who are not learned in the medical sciences.

Parol evidence may be admitted to show the meaning of words or phrases which are susceptible of different meanings. *Parks v. Elmore,* 59 Wash. 584, 110 Pac. 381; *Florence Fish Co. v. Everett Packing Co.,* 111 Wash. 1, 188 Pac. 792.

"The testimony of witnesses is admissible to explain not only technical words of art or science, but words or phrases having a local meaning or a special meaning in a particular calling, trade, business or profession. Such evidence does not contradict or change the written instrument. The presumption is that such terms were used according to their understood meaning in the place or the business with reference to which the contract is made, and evidence as to such meaning is the only method of ascertaining the intention of the parties in entering into the agreement." *Steidtmann v. Joseph Lay Co.,* 234 Ill. 84, 84 N. E. 640.

See, also, *Morris v. Hellums Co.,* 131 Ark. 585, 199 S. W. 927; *Hinote v. Brigman & Crutchfield,* 44 Fla. 589, 33 So. 303; 4 Jones Commentaries on Evidence (2d ed.), 2807, 2808, 2812; 5 Joyce, Law of Insurance (2d ed.), § 3807.

The oral testimony received by the court to make clear what the parties contemplated when the word "infection" was used in the certificate was clearly admissible. The doctors who testified were well qualified from learning and years of practical experience to in-

form the court and jury concerning the different meanings ascribed to the word "infection" and its relation to pneumonia.

 The instructions complained of were numbered six and seven. Instruction number six was given as follows:

"The jury is instructed that words and phrases as used (by an insurer), is a contract of insurance, are to be understood in their plain, ordinary and popular sense and not in any technical or scientific sense as used by scientific men or persons skilled in the niceties of language unless their technical or scientific sense is also in accord with their plain, ordinary and popular sense.

"The jury is further instructed that, if the jury finds that the conception of the average layman of the word 'infection' merely implies the invasion of germs or poison from outside the body into an opening or abrasion on the surface of the skin causing poisoning, the jury must then find that pneumonia was not an 'infection' within the meaning of the exception contained in the defendant's constitution and by-laws and certificate issued to decedent, and you must then eliminate such defense of the defendant from your consideration of the case; the jury must do this, even though it finds that, in a technical or scientific sense, pneumonia is an 'infection.' If, however, the jury finds that the plain, ordinary, usual and popular meaning of 'infection' includes pneumonia, then your verdict must be for the defendant."

Instruction number seven related to the question of whether pneumonia was to be considered as the proximate cause of the insured's death. The jury was told if they found

". . . that the pneumonia was induced by and was the immediate and proximate result of said surgical operation; and in this event your verdict must be for plaintiff unless you find that a pneumonia is an infection under the exception in defendant's constitution, . . ."

What we have said concerning the interpretation of the certificate, the question of proximate cause, and the admissibility of evidence, disposes of the questions relative to the instructions. The instructions as given by the trial court conformed to the principles of law which he adopted, and with which we are in agreement.

Judgment affirmed.

BLAKE, C. J., MAIN, MILLARD, and ROBINSON, JJ., concur.