[No. 33404. *En Banc.* November 8, 1956.]

TRUCK INSURANCE EXCHANGE, *Appellant,* v. ROY ROHDE
*et al., Respondents.*[1]

[1]Reported in 303 P. (2d) 659.

Moulton, Powell & Loney, for appellant.

Paul R. Roesch, for respondent Rohde.

Tonkoff, Holst & Hopp and Ralph Armstrong, for respondents Shaw et al.

Clarke, Clarke & Albertson (Watters & Donovan, James B. Donovan, and De Roy C. Thomas, of counsel), amici curiae.

OTT, J.—In this action, the Truck Insurance Exchange sought a declaratory judgment to determine the extent to which, by a contract of insurance, it had indemnified the named insured against liability to third persons, which contractual liability arose from the following stipulated facts:

An automobile owned by the defendant Roy Rohde was covered by the public liability insurance policy here in question. On May 3, 1953, at approximately 6:45 p. m., he was operating the automobile on a state highway. At that time, three motorcycles were approaching from the opposite direction, traveling on their own side of the highway at a speed of approximately fifty miles an hour, and about seventy-

five feet apart in echelon formation. The first and second motorcycles each carried a driver and one other rider. The third motorcycle carried only a driver.

As the motorcycles and the automobile converged, Roy Rohde, under circumstances admittedly amounting to negligence on his part, drove the automobile over the center line and collided with the first motorcycle at the left front fender of the automobile, whereupon the automobile turned counterclockwise, collided with the second motorcycle at the right front fender, turned further and came into collision with the third motorcycle on the right side near the rear of the automobile. While all vehicles were continuously in motion, the automobile and the three motorcycles collided in such a manner that disinterested witnesses heard three distinct "thuds."

Judgments which, in the aggregate, exceed fifty thousand dollars have been entered in favor of all of the motorcycle riders except one, and his action was pending when this appeal was perfected.

This action involves the construction of the provisions of an indemnity contract between the Truck Insurance Exchange and defendant Rohde. The portions of the contract material to a determination of the issues in this case are as follows:

(1) "Coverage A—Bodily Injury Liability. To pay on behalf of the insured all sums which the insured shall become legally obligated to pay as damages because of bodily injury, sickness or disease, including death at any time resulting therefrom, sustained by any person."

(2) "Coverage B—Property Damage Liability. To pay on behalf of the insured all sums which the insured shall become legally obligated to pay as damages because of injury to or destruction of property, including the loss of use thereof."

(3) The limits of liability for bodily injuries are "$20,000 each person $50,000 each occurrence."

(4) Section No. 6 in the body of the policy provides, under the heading of "LIMITS OF LIABILITY":

"The limit of bodily injury liability stated in the declara-

tions as applicable to 'each person' is the limit of the Exchange's liability for all damages, including damages for care and loss of services, arising out of bodily injury, sickness or disease, including death at any time resulting therefrom, sustained by one person in any one occurrence; the limit of such liability stated in the declarations as applicable to 'each occurrence' is, subject to the above provision respecting each person, the total limit of the Exchange's liability for all damages, including damages for care and loss of services, arising out of bodily injury, sickness or disease, including death at any time resulting therefrom, sustained by two or more persons in any one occurrence. . . .

"The inclusion herein of more than one insured shall not operate to increase the limits of the Exchange's liability."

(5) Endorsement ET-94, which listed the automobile driven by Roy Rohde on the day in question, provides, under "COVERAGE": "Bodily Injury Liability each person $20,000.00, each accident $50,000.00. Property Damage Liability each accident $5,000.00." The last clause in this endorsement provides:

"EFFECTIVE (not prior to time applied for) on FEBRUARY 28, 1953, this endorsement, when countersigned, becomes part of the above numbered policy and supersedes and controls anything in the policy contrary hereto but is otherwise subject to the declarations, insuring agreements, exclusions and conditions thereof."

In construing the contract of indemnity, the trial court concluded that there was an accident or an occurrence as each motorcycle collided with the automobile, and that there were three separate and distinct accidents or occurrences, to each of which the indemnity limits of the contract applied. Judgment was entered accordingly. The insurance company has appealed.

■ The words of the contract which are the basis of this litigation, and the meaning of which must be determined, are "accident" and "occurrence." These words are not specifically defined in the contract. Since they are not so defined, we must determine their popular and ordinary meaning. *Kane v. Order of United Commercial Travelers of America*, 3 Wn. (2d) 355, 100 P. (2d) 1036 (1940). To de-

termine such meaning, we will resort to the definitions in Webster's New International Dictionary (2d ed.), which are as follows:

An accident is " . . . an undesigned and unforeseen occurrence of an afflictive or unfortunate character; . . . "

An occurrence is "Any incident or event, esp. one that happens without being designed or expected; . . . ."

The first assignment of error is directed to the court's conclusion that the word "accident," as found in endorsement ET-94, is controlling. The endorsement specifically provides that the language in it supersedes and controls anything in the policy contrary thereto. The policy uses the word "occurrence." The endorsement uses the word "accident." We find no error in the trial court's determination that the word to be construed was "accident." However, in our opinion and for the purposes of this case, the terms, "accident" and "occurrence," are synonymous.

A basic rule in the construction of contracts is that the intention of the parties must control. *Silen v. Silen,* 44 Wn. (2d) 884, 890, 271 P. (2d) 674 (1954). The intent of the parties must be ascertained by reading the contract as a whole. *Johnston v. Maryland Cas. Co.,* 22 Wn. (2d) 305, 308, 155 P. (2d) 806 (1945).

When the insured solicited this contract of indemnity, he sought to accomplish two things: (1) Coverage for the wrongful acts for which he would be legally liable to third persons or, in other words, indemnity for his liability resulting from tort, and (2) a contract in which a fixed and definite sum of money would be paid by the insurer to the insured for the insured's liability to third persons resulting from such wrongful acts. In this instance, the insured selected a contract of indemnity, for a premium he was willing to pay, which provided an indemnity coverage of five thousand dollars maximum for all property damage, twenty thousand dollars maximum for each person injured, with fifty thousand dollars maximum for all persons injured in any one accident or occurrence. The contract establishes that the insurer intended to indemnify the insured in the above manner.

When, as a result of this accident, respondent Rohde's aggregate liability exceeded the limits of his contract of indemnity, a dispute arose between the insured and the insurer as to the scope and meaning of the terms, "each accident" or "each occurrence."

The respondents contend that each impact was a separate accident, although they admit that the proximate cause of all three impacts was the single negligent act of the insured in driving his automobile on the wrong side of the highway, which proximate cause was continuous and uninterrupted in its effect while all of the vehicles continued in motion.

The appellant contends that, since there was a single, continuous, and uninterrupted act of negligence, there could be but a single accident or occurrence.

We first must determine from the indemnity contract whether or not it was contemplated that, in one occurrence or accident, more than one person could be injured or more than one vehicle or item of property could be damaged. The contract provides for "$20,000 each person," with a maximum of fifty thousand dollars for all persons injured in any one accident or occurrence. This language of the contract indicates that the insured and the insurer contemplated injury to more than one person in a single accident or occurrence.

The contract further provides that the insurer will pay all sums, up to five thousand dollars, which the insured would become liable to pay as damages because of his wrongful acts resulting in injury to or destruction of property. This language indicates that the parties contemplated that more than one vehicle or more than one item of property might be damaged in a single occurrence, but that the limit of indemnity for the damage to or destruction of all property involved in a single accident or occurrence would be five thousand dollars. If, within the confines of a single accident or occurrence, damage to more than one item of property was contemplated, more than one impact also was contemplated, either directly with the insured's automobile or with another object, the proximate cause of either impact

being the negligence of the insured. It follows that, at the time the insured and the insurer entered into the contract indemnifying the insured against liability for his wrongful acts, the parties intended that, within any one accident or occurrence, there could be more than one impact damaging or destroying more than one item of property and resulting in injury to more than one person.

 The insured and the insurer intended by this contract to indemnify the insured's *tort* liability to third persons. Such liability arises from a negligent act on the part of the insured which is the proximate cause of an injury. The absence of proximate cause precludes tort liability. Proximate cause is an integral part of any interpretation of the words "accident" or "occurrence," as used in a contract for liability insurance which indemnifies the insured for his tortious acts. See *Hyer v. Inter-Insurance Exchange of the Automobile Club of Southern California,* 77 Cal. App. 343, 246 Pac. 1055 (1926); *Saint Paul-Mercury Indemnity Co. v. Rutland,* 225 F. (2d) 689 (1955).

The respondents cite *Bruener v. Twin City Fire Ins. Co.,* 37 Wn. (2d) 181, 222 P. (2d) 833, 23 A. L. R. (2d) 385 (1950), as supporting their contention. The question before the court in that case did not involve a consideration of *negligence* or of *liability to third persons for tort.* The rule announced in the *Bruener* case is not applicable here.

 The contract here in question contemplated that injury or damage might occur, as the result of the insured's negligence, to more than one person or item of property within a single accident or occurrence. The stipulated facts establish that, as a direct result of the insured's negligence, his vehicle went out of control, either before or simultaneously with the first collision, and that it remained out of control until it came to rest after the third collision. There was but one proximate, uninterrupted, and continuing cause which resulted in all of the injuries and damage. We are of the opinion that the contract contemplated that the terms, "accident" and "occurrence," included all injuries or damage within the scope of the single proximate cause. The stipu-

lated facts before us admit a single proximate cause and, hence, constitute one accident rather than three.

This conclusion is supported by *Hyer v. Inter-Insurance Exchange of the Automobile Club of Southern California, supra,* where a California court was considering a similar contract. In that case, one automobile collided, in an unbroken chain of events, with two automobiles owned by different individuals. The liability exceeded the maximum coverage. The insured contended that there were two accidents, and that the maximum of the policy applied to each. The court found that there was but one accident, due to the fact that there was but a single, continuous proximate cause. See, also, *Denham v. LaSalle-Madison Hotel Co.,* 168 F. (2d) 576 (1948); *Saint Paul-Mercury Indemnity Co. v. Rutland, supra.*

The respondents rely upon *Anchor Cas. Co. v. McCaleb,* 178 F. (2d) 322 (1949), as authority for their contention that the facts before us constituted three accidents. Because of the wording of the policy and the unique factual situation presented in the *Anchor Cas. Co.* case, it is not authority for a similar result in the case at bar.

Does the fact that the insured might have asserted, in answer to the complaints, different and separate defenses, such as last clear chance or contributory negligence, against *each* of the motorcycle drivers and riders, require a conclusion that there were three separate accidents resulting from a single continuous and uninterrupted act of negligence on the part of the insured?

■ The fact that separate defenses exist against causes of action based upon a single act of negligence, does not change the *character of the event* from one to three accidents. This is well illustrated by the circumstances presented in *Rutherford v. Deur,* 46 Wn. (2d) 435, 282 P. (2d) 281 (1955). In that case, only two automobiles were involved. The negligent driver of the first automobile had separate defenses against the driver and passenger in the other. Although there were separate defenses in the *Rutherford* case, there was but one accident. For the same reason,

the fact that, in the instant case, there were separate defenses against each party plaintiff, does not increase the number of accidents from one to three.

We conclude that the number of separate defenses to causes of action based upon a single act of negligence is not determinative of the number of accidents resulting from such negligence.

Finally, were the terms of this contract ambiguous, in the light of the purposes for which the policy was written? Are the words "accident" and "occurrence," as used in the contract, susceptible of more than one meaning?

We are of the opinion, from reading the contract as a whole, that the language used is not ambiguous, and that the intention of the parties and what they desired to accomplish are clearly expressed therein. The words "accident" and "occurrence" are words of common usage and, in and of themselves, are not ambiguous. An ambiguity will not be read into a contract. *Rew v. Beneficial Standard Life Ins. Co.*, 41 Wn. (2d) 577, 250 P. (2d) 956, 35 A. L. R. (2d) 891 (1952).

The trial court erred in concluding that there were three accidents, within the meaning of this public liability contract. We find merit in appellant's assignments of error Nos. 2, 3, 4, and 5. Thus, we do not reach appellant's remaining assignments of error.

The cause is remanded, with instructions to modify the judgment in accordance with the views expressed herein, namely, that there was but one accident, and that the maximum indemnity allowable is fifty thousand dollars for bodily injuries and five thousand dollars for property damage. As so modified, the judgment is affirmed. Appellant will recover costs on this appeal.

DONWORTH, C. J., MALLERY, SCHWELLENBACH, and WEAVER, JJ., concur.

HILL, J. (dissenting)—I believe that there were three accidents, and I therefore dissent.

ROSELLINI, J. (dissenting)—I disagree with the conclu-

sion of the majority that the provision of the contract limiting the liability of the insurer is not ambiguous.

This litigation arises out of a dispute as to the meaning of the terms "each accident" and "each occurrence." These terms are nowhere defined in the contract or the endorsement attached thereto.

A basic rule in the interpretation of an insurance contract is that the words, phrases, and terms used shall be given their plain, popular, and ordinary meaning unless it is apparent from a reading of the whole instrument that a different or special meaning was intended, or is necessary in order to avoid an absurd or unreasonable result. *Christensen v. Sterling Ins. Co.*, 46 Wn. (2d) 713, 284 P. (2d) 287; *Kane v. Order of United Commercial Travelers of America*, 3 Wn. (2d) 355, 100 P. (2d) 1036.

In the case at bar, was there an accident or an occurrence when the automobile collided with the first motorcycle, and were there two other accidents or occurrences when it thereafter immediately collided with the second and then with the third motorcycle? Or, was it all one accident or one occurrence because of the close proximity of time and space, and because, as contended by the appellant, the respondent's original negligent act of getting on the wrong side of the highway was the proximate cause of all three collisions or impacts?

From the viewpoint of the people injured, there was an "accident" or "occurrence" each time the automobile struck one of the motorcycles.

From the viewpoint of the insured, who desired coverage for each event or incident in which he was involved, the first accident commenced with the first impact and terminated when the damage or injury resulting from the impact had been effected. The second and third accidents commenced and ended in the same manner.

From the viewpoint of the insurer, the accident started when the insured commenced his negligent conduct and terminated when his automobile came to rest, thus ceasing to cause damage or injury.

What would be the plain, usual, and ordinary meaning of the words "accident" and "occurrence," as used in this contract, under the above circumstances? Who can say what interpretation a person would adopt?

The term "accident," as it is used in insurance policies, has been the subject of interpretation in the courts of England and in this country. There have been different conclusions as to its meaning. *South Staffordshire Tramways Co. v. Sickness & Accident Assurance Ass'n*, 1 Q. B. 402 (1891); 63 L. T. 807; 60 L. J., Q. B. 260. *Allen v. London Guarantee & Accident Co. Ltd.*, 28 T. L. R. 254; *Anchor Cas. v. McCaleb*, 178 F. (2d) 322; *Chapin v. Ocean Accident & Guarantee Corp.*, 96 Neb. 213, 147 N. W. 465; *Messersmith v. American Fidelity Co.*, 232 N. Y. 161, 133 N. E. 432, 19 A. L. R. 876. These cases lend emphasis to the conclusion that the term "accident," if not defined in the insurance policy, is reasonably susceptible of two or more interpretations. Where the language is susceptible of more than one meaning, it is ambiguous. *Boeing Airplane Co. v. Firemen's Fund Indemnity Co.*, 44 Wn. (2d) 488, 268 P. (2d) 654. Contracts of insurance are to be liberally construed, and an ambiguous provision construed most favorably to the insured. *Guaranty Trust Co. v. Continental Life Ins. Co.*, 159 Wash. 683, 294 Pac. 585. See, also, *Davis v. North American Accident Ins. Co.*, 42 Wn. (2d) 291, 254 P. (2d) 722. This court in *Selective Logging Co. v. General Cas. Co. of America, ante* p. 347, 301 P. (2d) 535, *Sills v. Sorenson*, 192 Wash. 318, 73 P. (2d) 798, held that, where a policy is susceptible of two interpretations, the meaning and construction most favorable to the insured must be applied *even though* the insurer may have intended another meaning.

Construing the instrument before us most favorably to the insured, the term "each accident" means each collision, rather than the results flowing from each act of negligence on the part of the insured; and consequently, three accidents occurred.

The majority chooses to follow the decision in the case of *Hyer v. Inter-Insurance Exchange of the Automobile Club*

*of Southern California,* 77 Cal. App. 343, 246 Pac. 1055, even though this court in *Bruener v. Twin City Fire Ins. Co.,* 37 Wn. (2d) 181, 222 P. (2d) 833, 23 A. L. R. (2d) 385 (overruling *Ploe v. International Indemnity Co.,* 128 Wash. 480, 223 Pac. 327, 35 A. L. R. 999), rejected the type of reasoning employed by the majority in the *Hyer* case, and applied instead the principle that a policy should be construed according to the plain meaning of its terms. We held the insurer not liable under a policy that did not cover "collision," which was the immediate physical cause of the damage, although the collision resulted from a skidding—one of the hazards insured against.

This court has thus taken the position that in determining the existence or nonexistence of coverage under an insurance policy in a particular situation, the event itself, rather than the proximate cause of such event, should be considered.

In *Jeffries v. General Cas. Co. of America,* 46 Wn. (2d) 543, 283 P. (2d) 128, the policy of insurance covered liability for injuries and damages arising out of the insured garage operation, but excluded automobile trailers rented to others while away from the premises of the insured. The insured rented a trailer to the plaintiff, who hauled it away attached to his automobile. While away from the premises, the trailer became unhitched and fell on the plaintiff's foot, injuring him. He recovered judgment against the insured for negligently hitching the trailer. This court found that the insurer was not liable, because, although the negligence occurred on the premises, the injury occurred elsewhere. The court said: "We are not concerned with the *cause* of the accident, but with *where* it took place."

It is thus seen that this court has rejected the contention that a policy of liability insurance should be construed in relation to proximate cause or that the term "accident" refers to the cause rather than to the result; and this is the same thinking expressed by the dissenting judge in the *Hyer* case, *supra,* who stated in part as follows:

"I dissent, because to my mind the word 'accident' in the indemnity policy in suit was intended by the parties to be

given its ordinary meaning, and this the opinion of my associates holds it should not receive.

". . . But my associates hold that an unusual meaning was intended by the parties, and that the word 'accident' had reference to the cause of the events rather than to the events themselves. Of course, if this indemnity policy contemplated that an 'accident' referred to a cause, and not to an 'event,' but one accident occurred, for which there was but one cause.

"There is a clear distinction between an insurance against accidents which may happen to the insured and one indemnifying him against loss for injuries which he may wrongfully cause to others. The former, in so far as fixing liability is concerned, clearly involves an inquiry into the intention, and care exercised by the insured, and his part in producing the event from which the loss occurs. The insurer would not agree to pay the insured for a loss which was intentionally caused by the insured himself. It is understood that the insured in such cases must be free from blame and wrongdoing; but in an indemnity contract the opposite is true. There, the contract contemplates reimbursement of the assured by the insurer of loss sustained as a consequence of the latter being required to pay a third party for injuries inflicted upon said third party or his property. Of course, this necessarily involves a recognition of the fact that the assured was guilty of an act violative of the rights of another, so as to create a liability for damages to that other. In such a contract the insurer is not concerned with the cause, except as above indicated; and so, when a limit is placed upon his liability for any one accident, the cause is not taken into consideration, but only the event and the loss resulting therefrom to the assured."

The judgment of the lower court should be affirmed.

FINLEY, J., concurs with ROSELLINI, J.,

---

March 6, 1957. Petitions for rehearing denied.