DECISION AND JUDGMENT ENTRY
Plaintiff-Appellant, Progressive Preferred Insurance Company ("Progressive"), appeals from a judgment of the Fulton County Court of Common Pleas declaring that under the terms of a commercial motor vehicle policy issued to Herr Sand Stone ("Herr") two "accidents" occurred, thereby allowing liability coverage of up to $1,000,000 on the claims of defendants-appellees, Rebecca S. Derby and James Derby, against Herr and its employee, James A. Green.
The undisputed facts of this case are as follows. On April 27, 1998, Rebecca Derby was working for Anderzack-Pitzen Construction Company, Inc., as a traffic control flagger on a construction site located along State Route 2, west of Archbold, Fulton County, Ohio. Green was operating a dump truck used to remove dirt and stone from the site. At the crucial time, Rebecca Derby was standing in one lane of State Route 2 with her back to the rear of the dump truck. Green placed the truck in reverse and began moving very slowly backward; he described the movement as "idling" in reverse. Green felt the rear, passenger side tires of the truck go over something that he believed might be a rock. Green immediately shifted, in one continuous movement, into forward gear and moved ahead slowly, again feeling the tires go over something. When Green stopped the vehicle, got out and looked back, he saw Rebecca lying on the road. It is undisputed that the rear, passenger side wheels of the truck ran over Rebecca twice; however, it is also undisputed that the reversal of the truck's movement only took an "instant" or "seconds."
Rebecca and her husband, James, filed an action against Herr and James Green seeking damages for the injuries she received on April 27, 1998. Progressive then filed the instant cause, a separate declaratory judgment action, asking the common pleas court to declare that the maximum amount of coverage available to its insured, Herr, and, consequently, to Rebecca and James Derby is $500,000, the liability coverage limit for one "accident." Rebecca and James filed an answer and a counterclaim asking the court to find that two "accidents" occurred because the dump truck ran over Rebecca twice. They therefore requested the court to hold that the limit of liability coverage in this instance was $1,500,000 (This figure includes a limit for compensation to James Derby on an emotional distress claim that is not a part of this appeal.).
The Greens subsequently filed a third action against Anderzack-Pitzen Construction Company, Inc. and its insurer, Cincinnati Insurance Companies. After the consolidation of all three cases, Progressive filed a motion for summary judgment in the present case. Rebecca and James Derby filed a memorandum in opposition and their own motion for summary judgment which also addressed only the question of the number of "accidents" that occurred within the meaning of the Progressive policy.
On December 19, 2000 and in a "clarification" of its judgment on January 3, 2001, the common pleas court granted appellees' motion for summary judgment. The court found that there were two separate "occurrences" and therefore declared the combined limit of coverage under the Progressive policy was $1,000,000. The court included the language required under Civ.R. 54(B) to render its judgment on this issue alone a final, appealable order. In its appeal, Progressive sets forth the following assignment of error:
 "THE TRIAL COURT COMMITTED ERROR BY GRANTING APPELLEES' MOTION FOR SUMMARY JUDGMENT AND DENYING APPELLANT'S MOTION FOR SUMMARY JUDGMENT."
We review the grant of summary judgment de novo. Grafton v. Ohio EdisonCo. (1996), 77 Ohio St.3d 102, 105. Therefore, either Progressive or appellees can prevail on their respective motions for summary judgment only if: (1) no genuine issue of material fact remains to be litigated; (2) it appears from the evidence that reasonable minds can reach but one conclusion and that conclusion is adverse to the nonmoving party; and (3) the moving party is entitled to summary judgment as a matter of law. Civ.R. 56(C); Horton v. Harwick Chem. Corp. (1995), 73 Ohio St.3d 679, paragraph three of the syllabus.
Progressive asserts that the trial court erred in granting summary judgment to appellees and in denying its motion because under the "cause approach," as used to determine this issue, only one accident occurred within the meaning of the commercial motor vehicle liability policy issued to Herr. Progressive further argues that the trial court's reliance on Kish v. Central Nat'l Ins. (1981), 67 Ohio St.2d 41, in reaching the conclusion that two accidents happened was misplaced.
We agree with the trial court in finding that there are no factual disputes in the case before us. Thus, the disposition of this case rests upon the construction of the language in the various provisions of an insurance contract and the law applicable to the undisputed facts.
The construction of an insurance contract is a matter of law. ChicagoTitle Ins. Co. v. The Huntington Nat'l Bank (1999), 87 Ohio St.3d 270,273. When the intent of the parties is evident from the clear and unambiguous language in the provision, the plain language of the provision must be applied. Hybud Equip. Co. v. Sphere Drake Ins. Co. (1992), 64 Ohio St.3d 657, 665, citing Karabin v. State Auto. Mut. Ins.Co. (1984), 10 Ohio St.3d 163.
The Progressive commercial motor vehicle liability policy states, in relevant part:
Limit of Liability
 "Regardless of the number of insured autos, separate premiums paid, insureds, claims made, vehicles involved or lawsuits brought, we will pay no more than the Limit of Liability shown for this coverage in the Declarations, subject to the following:
"* * *
"2. COMBINED BODILY INJURY AND PROPERTY DAMAGE LIMITS:
 "* * * if your Declarations indicates that combined bodily injury and property damage limits apply, the most we will pay for the aggregate of all damages resulting from any one accident is the combined liability insurance limit shown in the Declarations."
The Declarations page of the policy issued to Herr plainly and unambiguously provides a combined single limit of liability coverage for bodily injury and property damage in the amount of $500,000 per accident. Our consideration of the policy language does not, however, end here. The key term in the case before us is "accident."
The Progressive policy defines an "accident" as:
 "a sudden, unexpected and unintended event, or a continuous or repeated exposure to that event that causes bodily injury or property damage and arises out of the ownership, maintenance or use of your insured auto."
In addition, the section of the policy limiting liability reads, in material part: "For the purpose of determining our Limit of Liability * * *, all bodily injury * * * resulting from continuous or repeated exposure to substantially the same conditions shall be considered as resulting from one accident." A plain reading of this language can lead only to the conclusion that "accident," as used in the Progressive liability insurance policy includes a situation, such as the one before us, that involves multiple injuries arising from a single cause. See Banner v.Raisin Valley, Inc. (N.D.Ohio. 1998), 31 F. Supp.2d 591, 592.
This brings us to the central question in this case, that is, the appropriate law to employ in determining the number of accidents that occurred under the terms of Herr's motor vehicle liability policy. Although our research discloses that neither an Ohio appellate court nor the Ohio Supreme Court has addressed this issue, it has been decided in many other jurisdictions. We begin our discussion with a consideration ofBanner, a case determined by our own federal district court.
In Banner, a truck crossed the center line and, in a continuous sequence, collided with four other vehicles. Id. at 591-592. The determinative issue before the court was whether, for the purpose of the limit of liability under the trucker's insurance policy, one accident occurred or a series of separate accidents occurred. Id. at 591. The federal district court noted that in ascertaining the number of accidents under liability policies, courts have generally applied one of three approaches, these being: The limit of liability clause refers to (1) the cause or the causes of the accident; (2) the effect or result of the accident; or (3) the liability triggering event. Id. at 593. The majority of the jurisdictions apply the first standard, the so-called "cause approach." Id. See, generally, Annotation, What Constitutes Single Accident or Occurrence Within Liability Policy Limiting Insurer's Liability to a Specified Amount Per Accident or Occurrence (1988), 64 A.L.R.4th 668, 673.
The rationale underlying the cause approach is the fact that "[p]roximate cause is an integral part of any interpretation of the words `accident' or `occurrence' as used in a contract for liability insurance * * *." Truck Ins. Exchange v. Rhode (1956), 49 Wn.2d 465, 303 P.2d 659,662 (Citations omitted.). See, also, Olsen v. Moore (1972), 56 Wis.2d 340,202 N.W.2d 236, 239. Thus, where there is but one proximate, uninterrupted and continuous cause, all injuries and damages are included within the scope of that single proximate cause. Truck Ins. Exchange v.Rhode, 303 P.2d at 663. We agree with this reasoning and, as do most of the jurisdictions, adopt the cause approach in determining the number of accidents or occurrences under a liability policy.
The key in applying the cause approach in most situations is whether the tortfeasor ever regained control of his or her vehicle after the first collision. See Banner v. Raisin Valley, Inc.,31 F. Supp.2d at 593-594 (and the cases cited therein). However, the cause approach is also applied where the operator of a motor vehicle fails to regain control over the situation. For example, in Pemco Mut. Ins. Co. v.Utterback (1998), 91 Wn. App. 764, 960 P.2d 453, James W. Utterback was walking on a sidewalk located between a parking lot and a restaurant. As the tortfeasor was attempting to park in the lot, her car lurched forward, knocked down a sign and hit Utterback. It then backed up several feet and "immediately" lurched forward again, striking Utterback a second time. Utterback claimed that there were two accidents for the purpose of coverage under the tortfeasor's liability insurance. Id. at 453-454. The trial court found that, under the facts of that case, there was only one accident. Id. at 454. On appeal, the Utterback court applied the cause approach, holding that a single accident occurred because of the "interdependent nature of the two impacts and their continuity and proximity in time and location." Id. at 456-457. In addition, the court found that only one accident happened due to the fact that the tortfeasor never regained control over "either the car's injury-inflicting potential or the situation in general." Id. at 457, quoting Welter v. Singer
(Wis.App. 1985), 126 Wis.2d 242, 376 N.W.2d 84, 87.
In a case almost on point with the one before us, a Ms. Alderson backed over a child. Upon hearing a neighbor scream, she placed the car in forward gear and drove over the child again. Bish v. Guaranty Nat'l Ins.Co. (Nev. 1993), 109 Nev. 133, 848 P.2d 1057. The lower court determined that only one accident occurred and granted summary judgment in favor of the Alderson's liability insurer. In affirming that decision, the Supreme Court of Nevada employed the cause approach and found that although Alderson gained dominion over the motor vehicle between impacts with the injured child, she failed to gain control over the situation. Id. at 1059. The court concluded: "* * * all of the child's injuries are attributable to one proximate, uninterrupted and continuing cause: Alderson's negligence. Accordingly, respondent is liable for just one accident." Id.
The same conclusion was reached by a Wisconsin court in Welter v.Singer, supra. In that case, Bruce Welter was riding his bicycle through an intersection when he was struck by a car operated by Singer. Singer stopped after striking Welter, but then drove clear of the intersection dragging Welter under the car before stopping once again. Singer attempted to put the car in reverse, but went forward about one foot and stopped. Singer got out of the vehicle and Welter's bicycling companion got in. He drove the car backwards about ten feet in a vain attempt to free Welter. Welter suffered severe injuries as a result of the accident. Welter and his parents sought a decision finding that four accidents, not one, had occurred for the purpose of underinsurance coverage. Id. at 85. Following Olsen, the Welter court found that the cause approach was equally applicable to cases where one person or item of property receives more than one harm from a series of negligent acts.Id. at 87 (Citation omitted.). In determining that only one accident occurred, the court held:
 "While Welter's multiple injuries could have been inflicted at a number of times and places within that brief interval, it was the initial collision which created the occasion and circumstances for any subsequent injuries. There is no assertion that the last three operations of Singer's car would have inflicted any more injury or would have occurred at all in the absence of the initial impact.
 "A common sense view of the facts discloses that any of the appellant's injuries not inflicted by the first impact were the result of causes acting concurrently with and directly attributable to it. Hence, it was the predominant, active and continuing cause." Id.
In applying these principles to the undisputed facts of the case before us, reasonable minds could only conclude that one accident transpired. As in the cases discussed above, Green negligently backed over Rebecca Derby, shifted the dump truck into forward and drove over Rebecca again. All of these events were in a continuous series, closely linked in both time and space. Green was never in control of the truck's injury inflicting potential or of the situation at any time during this period. Thus, we conclude that it was Green's initial negligence that was the predominant, active and continuing cause of any and all of Derby's injuries. Accordingly, contrary to the trial court's judgment, a single accident occurred within the meaning of the Progressive liability insurance policy and appellant was entitled to summary judgment as a matter of law.
In making this decision, we have examined Kish, as well as all other cases cited by appellees, and do not find appellees' arguments concerning the application of the cause approach persuasive. In particular, we conclude that Kish is distinguishable from the case under consideration. Thus, we are of the opinion that Kish could not have been decided differently, as asserted by appellees and apparently adopted by the trial court, if it was analyzed under the cause approach using the "control of the situation" test.
In Kish, the victim's motor vehicle was struck from behind while stopped at a red light. He exited his vehicle to speak with the driver of the other vehicle. That driver emerged from his vehicle and shot and killed the victim as he attempted to re-enter his vehicle. The deceased's wife, as administratrix of his estate, asserted that she had a claim under the uninsured motorist provision of her motor vehicle insurance policy. Id. at 42. The precise issue in the case was whether the bodily injury to the deceased was the result of "an accident arising out of the ownership, maintenance, or use" of the uninsured vehicle, as required under the deceased's policy. Id. at 49-52. The Ohio Supreme Court determined that the claim of an insured under the uninsured provision of an insurance policy may not be denied only on the basis that the injury received was intentionally inflicted by another. Id. at paragraph one of the syllabus. Rather, the Ohio Supreme Court concluded that the relevant inquiry was whether the chain of events resulting in the accident was unbroken by the intervention of any event unrelated to the use of the uninsured vehicle. Id. at 50. In applying that standard, the court found that the intentional, criminal act of the murderer was an intervening cause of injury wholly disassociated from and independent of the use of the uninsured vehicle and, as such, was unrelated to the use of the uninsured vehicle. Id.
Clearly, Kish does not involve the problem of determining the number of accidents that occurred in a particular circumstance for the purpose of motor vehicle liability coverage and is distinguishable solely on that basis. Moreover, in the sense that Kish discusses causation, the deciding factor is a superseding, intervening cause. As a result, the fact that the drivers of the motor vehicles in that case may or may not have had control over the situation had no relevance to its disposition and would not have affected its outcome.
Finally, we find it necessary to discuss two cases cited by appellees. According to appellees, the first case, Greengo v. Public Employees Mut.Ins. Co. (1998), 135 Wn.2d 799, 959 P.2d 657, limited or eliminated the holding in Utterback. We disagree. The Supreme Court of Washington made no finding as to a determination of the number of accidents occurring in that case. Instead, the court found that there was a question of fact as to whether two of the drivers involved in the collision were separately negligent and were separate proximate causes of injuries to the third driver, Laurie Greengo, and simply reversed and remanded the case for further proceedings. Id. at 664-665. Thus, any claim that Greengo
affected the rule set forth in Utterback is unfounded.
Appellees also maintain that Voigt v. Reisterer (Wis.App. 1994),187 Wis.2d 459, 523 N.W.2d 133, limits Welter. Like Greengo, Voigt
involved two separate collisions with the same vehicle. Id. at 461. Initially, a car operated by Brockman crossed the centerline of a highway and collided head-on with a pickup truck operated by Voigt. Brockman was rendered unconscious, and Voigt was seriously injured. Three to five minutes after the first collision, a vehicle driven by Robert Reisterer rear-ended the Brockman car, propelling it into Voigt's truck again. Id. In utilizing the cause approach to determine the number of "occurrences," the court held:
 "First, there was the collision when Brockman crossed the centerline and struck Voigt. Then there was a time interval of three to five minutes before the next impact occurred. The cause of the first impact was interrupted such that the cause and result were not simultaneous or so closely linked in time and space to be considered one event by the average person. Thus, by applying the ordinary meaning, the first impact and the second impact were two separate occurrences." Id. at 466.
Phrased another way, the injuries to Voigt had two separate causes resulting from the separate negligent actions of two separate drivers. Thus, our reading of Voigt reveals no limitation or elimination of the standard set forth in Welter. Rather, it is merely the application of that standard to a case distinguishable on its facts.
In summary, we have reviewed all of the law set forth by the parties, as well as the law obtained through our own research, and concluded that the cause approach should be employed to determine the number of "accidents" for the purpose of "per accident" coverage under a motor vehicle liability insurance policy. In analyzing the instant case pursuant to the cause approach, reasonable minds can only conclude that only one accident happened, thereby limiting Progressive's liability coverage in this cause to $500,000. Therefore, the trial court erred in granting summary judgment to appellees and in denying Progressive's motion for summary judgment. For these reasons, Progressive's sole assignment of error is found well-taken.
The judgment of the Fulton County Court of Common Pleas is reversed. This cause is remanded to that court for entry of summary judgment in favor of Progressive Preferred Insurance Company as a matter of law. Appellees are ordered to pay the costs of this appeal.
A certified copy of this entry shall constitute the mandate pursuant to App.R. 27. See, also, 6th Dist.Loc.App.R. 4, amended 1/1/98.
 ________________________ Melvin L. Resnick, JUDGE
James R. Sherck, J. and Mark L. Pietrykowski, P.J. CONCUR.