[No. 40630-2-I.   Division One.   July 6, 1998.]

PEMCO MUTUAL INSURANCE COMPANY, *Respondent,* v. JAMES W. UTTERBACK, *Appellant.*

---

*Bradley K. Crosta* of *Crosta & Bateman*, for appellant.
*Bradley A. Maxa* of *Gordon, Thomas, Honeywell, Malanca, Peterson & Daheim*, for respondent.

AGID, J. — James W. Utterback was injured when Jeanette Heinz-Naehr's car lurched forward and jumped the curb not just once but twice while she tried to park it. When Mr. Utterback sued to recover for his injuries, Ms. Heinz-Naehr's insurer, Pemco Mutual Insurance Company, sought a declaratory judgment to determine whether one or two accidents had occurred. The trial court concluded that Mr. Utterback's injuries were the result of a single accident and not two separate accidents, and granted summary judgment to Pemco. We agree with the trial court that Ms. Heinz-Naehr's original negligent conduct caused the second

impact with Mr. Utterback in a continuous sequence and affirm.

## FACTS

On October 8, 1994, 84-year-old James W. Utterback was walking along a sidewalk between a parking lot and a restaurant when 83-year-old Jeanette Heinz-Naehr tried to move her car forward into a parking space. As she attempted to do so, the car lurched forward, knocked down a handicapped parking sign, jumped the curb and hit Mr. Utterback, knocking him against the wall of the building. Because he was "injured, frightened and in pain," he stayed where he was as the car backed up several feet and "immediately" lurched forward again striking him a second time. The car then stopped, and Ms. Heinz-Naehr remained in the driver's seat with the engine running until one of Mr. Utterback's companions got into the car, persuaded her to get out, and backed the car away from Mr. Utterback. Ms. Heinz-Naehr testified at her deposition that the car first lurched forward when her foot slipped off the brake and hit the accelerator. She also testified that her foot then got stuck under the gas pedal and she was not able to extricate it "until it was all over." Mr. Utterback suffered compound fractures of both femurs and serious complications, including a heart attack. He incurred medical bills in excess of $120,000.

Mr. Utterback sued to recover for his injury asserting separate causes of action for each of what he alleged were two separate accidents. Under Ms. Heinz-Naehr's insurance policy, the maximum for a single accident is $110,000. Pemco denied that two separate accidents occurred and filed this action for a declaratory judgment to determine whether, under the facts of this case, it was entitled to treat the incident as a single accident. The trial court granted Pemco's motion for summary judgment, holding that the incident comprised just one accident. Mr. Utter-

back challenges the trial court's ruling, arguing that there was not one accident but two.

## DISCUSSION

■ In reviewing a summary judgment order, we engage in the same inquiry as the trial court, construing facts and reasonable inferences in the light most favorable to the nonmoving party.[1] Summary judgment should be granted only if there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law.[2] When reasonable minds can reach but one conclusion, questions of fact may be determined as a matter of law.[3]

■ We interpret an insurance policy as a matter of law[4] and give it a fair, reasonable and sensible construction as would an average insurance purchaser.[5] If the language in an insurance contract is clear and unambiguous, we must enforce it as written and may not modify the contract or create ambiguity where none exists.[6] "[T]he words 'accident' and 'occurrence' are words of common usage and, in and of themselves, are not ambiguous."[7]

■■ No Washington case has directly addressed the question whether one or two accidents occur for purposes of insurance coverage when a single vehicle strikes the same person twice in rapid succession. In *Truck Ins. Exch. v. Rohde*, however, the Washington Supreme Court adopted

---

[1] *Mountain Park Homeowners Ass'n v. Tydings*, 125 Wn.2d 337, 341, 883 P.2d 1383 (1994).

[2] *Id.*

[3] *Ruff v. King County*, 125 Wn.2d 697, 704, 887 P.2d 886 (1995).

[4] *Transcontinental Ins. Co. v. Washington Pub. Utils. Dists.' Util. Sys.*, 111 Wn.2d 452, 456, 760 P.2d 337 (1988).

[5] *Kish v. Insurance Co. of N. Am.*, 125 Wn.2d 164, 170, 883 P.2d 308 (1994).

[6] *Id.*

[7] *Truck Ins. Exch. v. Rohde*, 49 Wn.2d 465, 473, 303 P.2d 659, 55 A.L.R.2D (1956). Pemco's insurance contract defines a "motor vehicle accident" or "accident" as "an unexpected or unintended occurrence resulting from ownership, maintenance, or use of a motor vehicle."

a "cause" analysis for determining the number of accidents, holding that all injuries or damage within the scope of a single "proximate, uninterrupted, and continuing cause" must be treated as arising from a single accident.[8] In *Rohde*, a driver crossed the center line, striking three motorcycles, each about 75 feet apart, one after the other while his car was spinning out of control.[9] Even though Rohde admitted that the proximate cause of the accident was a single negligent act, he contended that each impact was a separate accident. Because the insured's vehicle went out of control, either before or at the time of the first collision, and remained out of control until it came to rest after the third collision, the Court held that just one "accident" occurred.[10]

The Supreme Court declined to apply *Rohde* in two later cases, distinguishing each on its facts. In *Transcontinental Ins. Co. v. Washington Pub. Utils. Dists.' Util. Sys.*, numerous bondholders raised various claims alleging damages arising out of a bond default.[11] Transcontinental, citing *Rohde*, argued that its liability was limited because all damages flowed from a single act. Because the bondholders' allegations involved "several types of injuries flowing from multiple, distinct events unlike the single auto accident in *Rohde*," the Court rejected Transcontinental's argument.[12] Unlike *Rohde* where the driver's loss of control constituted "one proximate, uninterrupted cause," there were other alleged causes separate from the cause to which Transcontinental had pointed.[13] The Court explained that "the number of triggering events depends on the number of

---

[8]*Truck Ins. Exch. v. Rohde*, 49 Wn.2d 465, 471, 303 P.2d 659, 55 A.L.R.2D (1956).

[9]*Id.* at 467.

[10]*Id.* at 471.

[11]111 Wn.2d 452, 760 P.2d 337 (1988).

[12]*Id.* at 466.

[13]*Id.*

causes underlying the alleged damage and resulting liability."[14]

In *Mid-Century Ins. v. Henault*,[15] the Court again distinguished *Rohde* on its facts. In *Henault*, a car hit a motorcyclist who was lying in the roadway after she was ejected from her motorcycle in an earlier collision.[16] Because "the sequence of events which led up to Henault's being struck . . . in the second impact was not uninterrupted" and "sufficient time had passed for [the second driver] to arrive at the scene, see Henault lying in the roadway, slow down, and stop before the second impact," the Court held that it constituted a separate accident.[17]

Two cases from other jurisdictions using a "cause" analysis to determine the number of accidents are instructive. Both cite *Rohde* with approval, relying on it as support. In *Bish v. Guaranty Nat'l Ins. Co.*,[18] a driver twice ran over a 4-year-old girl on the sidewalk adjacent to the driveway, first backing over her and, after hearing a neighbor scream and realizing what had happened, putting the car in forward gear and driving over the child again. Bish, as guardian ad litem for the child, contended that she was entitled to collect for two separate accidents because the child's injuries were the result of two separate and distinct impacts that occurred within a few seconds of one another. She argued that the driver was in control of the vehicle both times she ran over the child and that the chain of causation was broken by the driver's actions in making eye contact with a witness and changing gears.[19] The court rejected her argument, noting that the focus of the inquiry

---

[14]*Id.* at 467 (citing *Liberty Mut. Ins. Co. v. Rawls*, 404 F.2d 880, 881 (5th Cir. 1968) ("two occurrences where driver struck two cars, but gained control between first and second impact").

[15]128 Wn.2d 207, 217, 905 P.2d 379, 59 A.L.R.5TH 789 (1995).

[16]*Id.* at 209.

[17]*Id.* at 217.

[18]109 Nev. 133, 848 P.2d 1057 (1993).

[19]*Id.* at 1058.

is not on the "number, magnitude or time of the injuries" but "whether there [is] one or more than one cause which resulted in all of the injuries."[20] Because the initial collision "created the occasion and circumstances for [the victim's] subsequent injuries," the court held that just one accident occurred.[21] It reasoned that the driver shifted gears because she was confused, not because she regained control. Thus, although the driver "regained dominion of the car," she never regained control over *the situation*.[22]

The *Bish* court noted its case was analogous to *Welter v. Singer*.[23] In *Welter*, the driver hit a bicyclist riding in an intersection. After the collision, the driver stopped and then drove clear of the intersection, dragging the bicyclist beneath the car.[24] The driver stopped a second time and, in an attempt to find reverse gear, moved the car forward again about a foot. At that point, he got out of the car and the bicyclist's cycling companion got in and backed the car about 10 feet in an attempt to free him.[25] The bicyclist sued, claiming there were four separate accidents. The *Welter* court rejected his argument, reasoning that although the driver "may have regained full control of his car each time he stopped," he "never regained a full measure of control over either the car's injury-inflicting potential or the situation in general."[26] The same is true here.

Mr. Utterback contends that because the vehicle here backed up before lurching forward a second time, Ms.

---

[20]*Id.*

[21]*Id.* at 1058-59 (noting "[t]he proximity in both time and space of the events at issue, together with their direct interdependence").

[22]*Id.*

[23]126 Wis. 2d 242, 376 N.W.2d 84 (Ct. App. 1985), *review denied*, 383 N.W.2d 63 (1986).

[24]*Id.* at 85.

[25]*Id.*

[26]*Id.* at 87 (distinguishing *Rawls* because in that case the driver did regain control of the injury-inflicting potential of his car, i.e., the speeding driver rear-ended a car, knocked it off the road, and then left it and its injured passengers behind while he crossed into the oncoming lane and struck an oncoming vehicle without any apparent loss of control).

Heinz-Naehr must have regained control of her vehicle and, therefore, two separate accidents occurred. But the facts and every reasonable inference drawn from them suggest the contrary. Like Bish, Ms. Heinz-Naehr's act in shifting gears was clearly the result of confusion rather than control.[27] According to Ms. Heinz-Naehr, she lost control of the car as she shifted the car from 'park' into 'drive' when her foot slipped off the brake, struck the accelerator, and then somehow became stuck under the gas pedal. She testified that she does not remember putting the car in park or in reverse and that she "didn't get [her] foot out until it was all over with." Because her foot was stuck under the gas pedal, she also never applied the brake. This is consistent with Mrs. Utterback's testimony that she thought Ms. Heinz-Naehr never got her foot on the brake but had her foot on the gas throughout the entire incident. Ms. Heinz-Naehr explained that she was so flustered by her loss of control that someone had to come sit with her while she calmed down enough to get out of the car.[28] This is consistent with the testimony of the Utterbacks and other witnesses that another person had to insist that Ms. Heinz-Naehr get out of the car so he could put the car in reverse and back it away from Mr. Utterback. A disinterested witness told police that the car lunged forward, backed three or four feet, and "[t]hen immediately lunged forward again and completely pinned [Utterback] tight against the wall." While Mrs. Utterback characterized the time that elapsed between the two impacts as minutes and not seconds, she

---

[27]*See Bish*, 848 P.2d at 1059.

[28]Ms. Heinz-Naehr's capacity for becoming flustered was also demonstrated in the course of the following exchange which occurred during her deposition:

Q. As of the night of the accident, what was your age?

A. 83.

Q. And I think you said you had been driving for approximately 68 years?

A. I am now 64. I will be 65 in August.

Q. 85.

A. Of course, 85. Oh, dear.

also testified that it was "short," that the car never stopped, and that she was unable to do anything for her husband before it struck him a second time.

The interdependent nature of the two impacts and their continuity and proximity in time and location all require the conclusion that just one accident occurred.[29] Like the drivers in *Rohde, Bish* and *Welter,* Ms. Heinz-Naehr never regained control over the situation. There was just one proximate and continuing cause of both impacts—Ms. Heinz-Naehr's initial negligence that caused her to lose control of the vehicle.[30] The second impact occurred while she was attempting to extricate herself from the situation caused by the first impact and followed directly from it. Even if Ms. Heinz-Naehr momentarily gained some measure of control over her car as she was backing away after the first impact, the only reasonable inference on these facts is that she "never regained a full measure of control over either the car's injury-inflicting potential or the situation in general."[31] The trial court properly concluded that just one accident occurred.

Affirmed.

KENNEDY, C.J., and BECKER, J., concur.

Review denied at 137 Wn.2d 1009 (1999).

---

[29]Factors on which courts rely to determine the number of accidents for purposes of determining insurance coverage include proximity of time and location and whether the two impacts are directly interdependent. *See Bish,* 848 P.2d at 1059.

[30]*See Rohde,* 49 Wn.2d at 471.

[31]*See Welter,* 376 N.W.2d at 87. *See also Bish,* 848 P.2d at 1059 (although the owner regained dominion over the car, she never regained control over the situation).