26 P.3d 952 (2001)
107 Wash.App. 104
VALLEY FURNITURE & INTERIORS, INC., a Washington corporation, Appellant,
v.
TRANSPORTATION INSURANCE COMPANY, a foreign insurance company, Respondent.
No. 46932-1-I.
Court of Appeals of Washington, Division 1.
July 2, 2001.
*953 Scott Wakefield & Mark Thompson, Seattle, for Appellant.
Michael Runyan, Christopher Marzetti, Rehman Bashey, Seattle, for Respondent.
BAKER, J.
When Transportation Insurance Company (TIC) limited coverage of Valley Furniture's $205,000 claim of employee dishonesty to $50,000, Valley Furniture sued for declaratory judgment and breach of contract. It claimed that because three employees had participated in the thefts, three "occurrences" of theft for the purposes of insurance coverage had taken place. The trial court dismissed the action on summary judgment. We hold that one series of related acts occurred, and affirm.

I
Valley Furniture purchased a business insurance policy from Transportation Insurance Company (TIC), which provided coverage of $50,000 for each occurrence of property loss caused by employee dishonesty. An "occurrence" was defined in relevant part as:
All loss or damage:
. . .
(b) Involving a single act or series of related acts[.]
During the relevant policy period, Valley Furniture paid its employees on a monthly basis, but allowed them mid-month advances against their paychecks on request. The payroll manager would issue these draws to the employees and then submit records of the advances to the outside payroll company, which would make the appropriate deductions from the paychecks it issued. Over a period of six years, the payroll manager issued advances to herself and to two other employees, but failed to forward notices of *954 these draws to the outside payroll company. In total, she embezzled $102,800 for herself and assisted the other two employees in embezzling $49,753 and $43,800.
Employees of Valley Furniture could also purchase inventory at a discount, the payment for which was deducted from their paychecks. The payroll manager "purchased" $9,102 of merchandise, but failed to notify the payroll company of her purchases, so that the appropriate deductions were not made.
When Valley Furniture discovered the embezzlement, it claimed insurance coverage for three "occurrences" of employee theft. TIC instead determined that the employees' acts constituted a series of related acts and paid the per occurrence limit of $50,000. The trial court entered summary judgment in favor of TIC. Valley Furniture appeals.

II
We review summary judgment de novo, performing the same inquiry as the trial court.[1] A motion for summary judgment may be granted only if there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law.[2] The parties in this case agree as to the material facts. Their dispute centers around the meaning and effect of the policy language defining the term "occurrence" of employee dishonesty. Because an insurance policy is a contract between two parties, appellate courts apply the rules of contract interpretation and construction in discerning the meaning and effect of insurance policies.[3] Interpretation of an insurance policy is a matter of law.[4]
When interpreting an insurance policy, we consider the policy as a whole, giving the kind of reasonable and sensible construction to it that the average person purchasing insurance would give.[5] If the language in an insurance contract is clear and unambiguous, it must be enforced as written and a court may not modify the policy or create ambiguity where none exists.[6]
The employee dishonesty provision of the Valley Furniture business insurance policy provided coverage of $50,000 per occurrence of employee dishonesty. It defined the term "occurrence" in relevant part as:
All loss or damage:
. . .
(b) Involving a single act or series of related acts[.]
Valley Furniture contends that a separate "series of related acts" occurred as to each employee's receipt of unreimbursed wage advances.
Washington courts have not addressed what constitutes a "series of related acts" for insurance purposes. In Christ Lutheran Church v. State Farm Fire and Casualty Company,[7] the North Carolina Court of Appeals held that a church treasurer's unauthorized issuance of 24 checks to himself constituted one "series of related acts" because each act was part of a continuum of wrongful actions caused by the employee, not a new and individual act of dishonesty.[8]
In American Commerce Insurance Brokers, Inc. v. Minnesota Mutual Fire and Casualty Company,[9] the Minnesota Supreme Court interpreted identical language in a case where an employee embezzled funds by keeping cash payments from customers and *955 by issuing company checks to herself. The court determined that the phrase "series of related acts" was not ambiguous because it was intended to apply to "a continuous embezzlement scheme in which the dishonest employee converts funds from an employer by a common scheme or series of related acts on a constant basis."[10] The court held that whether acts by one employee were part of a "continuous embezzlement scheme" should be determined by considering whether the acts were connected by time, place, opportunity, pattern, and method or modus operandi.[11] The court concluded that two separate and distinct "occurrences" of employee theft had occurred: 1) the receipt of funds from customers; and 2) the writing of unauthorized checks.
We agree that the language at issue here is not ambiguous and find persuasive the reasoning of the Minnesota Supreme Court. Webster's Third New International Dictionary defines the word "series" as "a group of usually three or more things or events standing or succeeding in order and having a like relationship to each other."[12] "Related" means, "to show or establish a logical or causal connection between."[13] Thus, a "series of related acts" is a succession of logically or causally connected acts, linked by time, place, opportunity, pattern, and method.
In this case, one series of related acts occurred. Although three employees profited from the embezzlement, the loss would not have occurred but for the acts of the payroll manager. The other two employees had no independent access to the funds. The embezzlement as to all three employees began at the same time and continued for a period of years, ending at the same time. The same method was employed for all three. Possible factual scenarios may exist in which the acts of multiple employees could constitute more than one occurrence, but this is not such a case. We hold that the payroll manager's failure to report appropriate payroll deductions on behalf of three employees constitutes one occurrence under the TIC business policy.
Valley Furniture also argues that the payroll manager engaged in two occurrences of employee theft because she obtained monies both by unreimbursed payroll advances and unreimbursed inventory purchases. But the means employed was the failure to report sums that should have been deducted from her paycheck. The differing reasons for the failure to report payroll deductions are not two distinct methods of theft.
AFFIRMED.
BECKER, A.C.J., and COLEMAN, J., concur.
NOTES
[1] Pemco Mut. Ins. Co. v. Utterback, 91 Wash.App. 764, 767, 960 P.2d 453 (1998), review denied, 137 Wash.2d 1009, 978 P.2d 1097 (1999).
[2] CR 56(c); Utterback, 91 Wash.App. at 767, 960 P.2d 453.
[3] 2D Eric Mills Holmes and Mark S. Rhodes, Appleman on Insurance, Traditional Contract Interpretation and Construction, § 5.1, p. 3-4, 7 (1996).
[4] Pemco, 91 Wash.App. at 767, 960 P.2d 453.
[5] Queen City Farms v. Central Nat'l Ins., 126 Wash.2d 50, 65, 882 P.2d 703, 891 P.2d 718 (1994).
[6] Pemco, 91 Wash.App. at 767, 960 P.2d 453.
[7] 122 N.C.App. 614, 471 S.E.2d 124 (1996).
[8] 471 S.E.2d at 126.
[9] 551 N.W.2d 224 (Minn.1996).
[10] American Commerce, 551 N.W.2d at 228.
[11] American Commerce, 551 N.W.2d at 231.
[12] Webster's Third New International Dictionary 2073 (1993).
[13] Webster's at 1916.