31 P.3d 52 (2001)
SAFECO INSURANCE COMPANY OF ILLINOIS, a foreign insurer, and Safeco Insurance Company of America, a domestic insurer, Respondents,
v.
AUTOMOBILE CLUB INSURANCE COMPANY, a foreign insurer, Appellant.
No. 47172-4-I.
Court of Appeals of Washington, Division 1.
September 17, 2001.
*53 Raymond Stillman Weber, David Martin Schoeggl, Mills Meyers Swartling, Seattle, for Appellant.
David Bradley Hudson, Hudson Youngblood, Mountlake Terrace, for Respondents.
BAKER, J.
After cooperatively funding a $1.5 million settlement with the victims of a single car accident, three insurance companies now dispute how payment of the settlement should be apportioned among them. Safeco of Illinois and Safeco of America insured the owner of the car with a primary auto liability policy and a personal liability umbrella policy, respectively. Automobile Club Insurance Company (ACIC) insured the driver with both a liability policy and an umbrella policy. All agreed that Safeco of Illinois should contribute its primary automobile liability limits first. Because the "other insurance" clause in the ACIC liability policy was not intended to refer to umbrella policies, we hold that ACIC should next contribute the limits of that coverage. Finally, we hold that the household member exclusion clause in Safeco of America's umbrella policy violates public policy as it relates to insurance coverage for automobile accident victims. We conclude that the carriers who provided the two umbrella policies must equally fund the balance of the claim.

I
The Berman family nanny was driving the Bermans' car when it was involved in a single car accident. Janet Berman, who was a passenger at the time, died. Her two children, also passengers, were seriously injured. The estate of Janet Berman and the Berman children asserted claims for damages against the nanny.
As a permissive driver in the Berman household, the nanny was insured through the Bermans' $500,000 auto liability policy underwritten by Safeco of Illinois. At the time of the accident, the Bermans also owned a $1 million umbrella policy through Safeco of America. The policy excluded from coverage injuries to members of the Berman household. The nanny was also insured as a driver under her parents' auto liability policy and their umbrella policy, with limits of $500,000 and $1 million, respectively. These policies were issued by Automobile Club Insurance Company (ACIC).
*54 The insurance companies agreed to a $1.5 million settlement with the Bermans. Safeco of Illinois acknowledged that its liability policy should respond first to the claim, but the insurers could not agree which of the other policies should contribute, nor upon the order of priority for the remaining policies. Ultimately, ACIC paid $415,357 and Safeco of Illinois paid the balance as underinsured motorist (UIM) coverage. It then filed an action to recover from ACIC the sums paid from its UIM policy.
Because sufficient insurance existed to pay the entire settlement, the trial court ruled on summary judgment that the Berman UIM policy did not apply. It also ruled that ACIC's primary and umbrella policies were solely responsible for the balance of the claim because the Safeco of America umbrella policy expressly excluded from coverage injuries to household members. ACIC appeals.

II
We review an order on summary judgment de novo, performing the same inquiry as the trial court.[1] A motion for summary judgment may be granted only if there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law.[2] The sole issues before us are the meaning and validity of the parties' respective insurance policies, which we resolve as a matter of law.[3]
ACIC argues that the household member exclusion clause in the Safeco of America umbrella policy violates public policy and is therefore void. The policy covers, inter alia, personal injury or property damage arising out of an automobile accident, but excludes from coverage the insured and members of the insured's household.[4] Generally, insurance companies are free to limit their liability unless the limitation is contrary to public policy.[5] Courts are reluctant to invalidate an insurance policy clause on the grounds of public policy, but will do so if the clause is prohibited by statute, condemned by judicial decision or contrary to the public morals.[6] In Washington, we rely on particular statutes in determining the public policy surrounding an insurance policy clause.[7]
The validity of a household member exclusion in an umbrella policy is an issue of first impression in Washington, and the parties have cited no cases from other states that have addressed the question. But the Washington Supreme Court has long held that the household member exclusion clause is void as against public policy in the context of automobile liability insurance. In Mutual of Enumclaw Insurance Company v. Wiscomb,[8] the court considered two consolidated cases in which the plaintiffs were injured by their spouses in automobile accidents. In each case, the insurance company had denied coverage on the basis of the household member exclusion clauses in the respective policies.
In considering the validity of the exclusion, the supreme court found its analytical genesis in our state's financial responsibility act,[9] which requires those responsible for automobile accidents to demonstrate the financial ability to compensate not only the victims of those accidents, but potential future accident victims as well.[10] The court determined that the act conveys a strong public policy in favor of assuring adequate monetary protection *55 and compensation to those victims who suffer injuries through the negligent use of the state's highways by others.[11] Turning to the challenged exclusionary clauses, the court determined that unlike other exclusionary clauses in auto insurance policies, which focus on increased risks associated with the drivers of the insured vehicles,[12] the household member exclusion denies insurance coverage to an innocent class of victims for no good reason.[13] More disturbing to the court was the fact that the excluded class of victims was exposed to negligent operation of the covered vehicle more than included victims, because "[t]ypical family relations require family members to ride together on the way to work, church, school, social functions, or family outings."[14] Thus, these individuals could not practically avoid exposure to the risk for which they were uninsured.[15]
In Tissell v. Liberty Mutual Insurance Company,[16] the court again invalidated a household member exclusion clause, this time in the context of underinsured motorist coverage. In Tissell, a woman died when her husband lost control of the car in which she was riding and drove into a river. The applicable liability policy was insufficient to cover her damages, and the estate sought to recover additional damages from the couple's UIM coverage. The carrier denied the claim, based on the policy exclusion for household members. The supreme court reasoned that because the woman's estate had no alternate source of coverage, to deny her coverage would violate the public policy of full compensation to innocent victims of automobile accidents.[17]
The court's lead opinion in Tissell based its analysis on the public policy in favor of full compensation for accident victims, and the exclusion's singling out of a class of victims, the identity of which had no bearing on the nature of the insurer's risk. But, as pointed out by seven justices in a concurring opinion, the statutory purpose of UIM coverage is to provide a dual layer of coverage, sometimes described as a second layer of floating protection for the UIM insured. The court later reemphasized the position taken in the Tissell concurrence in Greengo v. Public Employees Mutual Insurance Company.[18]
Nevertheless, the different policy basis embraced by the concurring justices in Tissell should not be read as a rejection of the public policy of full compensation in the auto liability coverage context. Rather, the concurring justices were restating the different public policy applicable in the uninsured motorist coverage context. This was made clear in the later case of Mendoza v. Rivera-Chavez, in which the supreme court struck down a felony exclusion clause which would have prevented recovery for a passenger who died when the intoxicated driver of the car caused an accident. The court declared that both the financial responsibility act and the mandatory liability insurance act express a strong public policy in favor of full compensation,[19] and that the exclusion violated that policy by excluding coverage solely because of the gravity of the injuries to the victims.[20]
Based upon our supreme court's repeated characterization of the relevant public policy as one of full compensation for innocent victims of automobile accidents, we conclude *56 that the household member exclusion in Safeco of America's umbrella policy, as applied to recovery for injuries due to vehicular accidents, is void as against public policy. As the supreme court stated in State ex rel. Ralston v. Department of Licenses,[21] "[t]he automobile is a useful machine in our society, but it can also be a deadly weapon."[22] The purpose of Safeco's umbrella policy is in part to protect against the possible catastrophic injury this deadly weapon can cause. That is exactly what occurred here. There is no justifiable basis upon which to deprive household members of the full coverage available to every other potential victim. This especially holds true where there is no readily available alternative source of insurance and thus no practical way to avoid exposure to the risk for which they are uninsured.
Safeco argues that under Thompson v. Grange Insurance Association[23] and MacKenzie v. Empire Insurance Companies,[24] the court cannot extend public policy considerations to the construction of umbrella policies. But the issues in those cases are inapposite to the question presented here. In Thompson and MacKenzie, the courts addressed whether RCW 48.22.030, which requires every new or renewal automobile policy to provide UIM coverage unless specifically rejected, applies to umbrella or excess coverage policies. Both courts held that where primary automobile insurance policies offered UIM coverage, the statute did not require mandatory UIM coverage in umbrella policies. In this case, we are not being asked to construe Safeco of America's umbrella policy as including a type of coverage not already explicitly included therein. Rather, where excess auto coverage is explicitly provided, we must determine whether public policy prohibits excluding therefrom the arbitrarily designated class of household member victims for no legitimate reason. We hold that it does, and thus invalidate the exclusion in the context of recovery for vehicular accident injuries.
We likewise reject Safeco of America's argument that the public policy stemming from the mandatory liability insurance act and the financial responsibility act only applies to the minimum levels of coverage mandated by statute.[25] The supreme court in Wiscomb did not limit its holding to coverage at or below statutory minimum levels, but voided the family member exclusion clause as to the entire automobile liability policy at issue. As the court in Mendoza reasoned, it would be perverse indeed that "victims who are less seriously injured would be covered, but those who are badly injured or killed would be excluded from coverage."[26] It is precisely in the latter cases where the public policy of compensating victims of negligent driving is most applicable.[27]
Finally, we are unpersuaded by Safeco of America's assertion that RCW 46.29.490(7) supports its position. The statute simply provides that excess liability coverage need not conform to all the requirements of the chapter. In no manner does it purport to authorize the arbitrary exclusion of a class of victims from coverage expressly bargained for and otherwise provided. We hold that a household member exclusion clause in umbrella or other excess insurance policies, which include coverage for damages from vehicular accidents, is void as against public policy as to such damages.

III
ACIC next argues that the "other insurance" clause in its primary policy renders its coverage excess to Safeco of America's umbrella policy and consequently, Safeco must exhaust those policy limits before *57 ACIC must respond. Safeco of America contends that ACIC's exclusionary language cannot be interpreted to be excess insurance over its umbrella policy because an umbrella policy, by its nature, is intended to apply only in the event that all other applicable insurance is exhausted.
Insurance policies are contracts and courts therefore interpret them according to the rules of contract construction.[28] Contracts are interpreted according to the intent of the parties, which is discerned from the language of the contract and the circumstances in which it is formed.[29] We use the "context rule" in our interpretation, meaning that we may consider extrinsic evidence to understand the meaning of the contract language, regardless of whether or not the language in the contract is ambiguous.[30]
ACIC's "other insurance" clause states in relevant part:
Any insurance we provide with respect to a vehicle you do not own shall be excess over any other collectible insurance....
The "other insurance" clause of Safeco of America's umbrella policy states:
If other valid and collectible insurance is available to the insured covering a loss also covered by this policy, other than insurance that is in excess of the insurance afforded by this policy, the insurance afforded by this policy shall be in excess of and shall not contribute with such other insurance.
ACIC contends that the language of both provisions plainly places ACIC's automobile liability policy excess over the Safeco of America umbrella policy. It supports its position by citing Unigard Insurance Group v. Royal Globe Insurance Company[31] in which the Idaho Supreme Court addressed similar facts and policy language. The court in Unigard determined that the policy language was plain and unambiguous and concluded that the driver's primary policy was excess to the owner's umbrella policy.
We are not persuaded by the Idaho court's analysis in Unigard. Instead, we adopt the majority view that we cannot interpret the competing clauses of these policies in a vacuum, but must instead consider them in light of the total insuring intent of all the parties.[32] On that basis, we consider the nature and purpose of primary and excess insurance policies as well as the function of "other insurance" clauses.
Primary policies are exactly that, the first line of defense in the event of accident or injury. Because multiple insurance policies often apply to the same accident,[33] insurance companies insert "other insurance" clauses into their policies in an effort to limit or extinguish liability so as to prevent a victim's *58 double recovery.[34] At a different level of insurance are umbrella policies, which do not activate until a primary policy has been exhausted.[35] The purpose of an umbrella policy is to protect the insured in the event of a catastrophic loss in which liability damages exceed available primary coverage.[36]
In light of the different purposes of primary and excess coverage policies, we hold that the "other collectible insurance" referenced in ACIC's primary automobile liability policy was intended to refer to other primary automobile liability policies, not to umbrella policies such as Safeco of America's. Therefore, ACIC's primary automobile liability policy must next apply to the settlement amount.
Once its policy limits are exhausted, then the insurers under each umbrella policy should contribute dollar for dollar on the balance of the claim.[37]
REVERSED.
COLEMAN, J., and BECKER, A.C.J., concur.
NOTES
[1] Pemco Mut. Ins. Co. v. Utterback, 91 Wash.App. 764, 767, 960 P.2d 453 (1998), review denied, 137 Wash.2d 1009, 978 P.2d 1097 (1999).
[2] CR 56(c); Pemco, 91 Wash.App. at 767, 960 P.2d 453.
[3] Pemco, 91 Wash.App. at 767, 960 P.2d 453.
[4] The policy states: "We will pay on behalf of the insured ... damages because of covered personal injury or property damage." "Insured" is defined as: "[Y]ou and ... any member of your household." The policy excluded coverage for "Any personal injury to you or a member of your household."
[5] Mendoza v. Rivera-Chavez, 140 Wash.2d 659, 662, 999 P.2d 29 (2000).
[6] Mendoza, 140 Wash.2d at 662-63, 999 P.2d 29.
[7] Mendoza, 140 Wash.2d at 663, 999 P.2d 29.
[8] 97 Wash.2d 203, 643 P.2d 441 (1982).
[9] RCW 46.29.
[10] Wiscomb, 97 Wash.2d at 206-07, 643 P.2d 441.
[11] Wiscomb, 97 Wash.2d at 207, 643 P.2d 441.
[12] See St. Paul Fire & Marine Ins. Co. v. Circle Bar J Boys' Ranch, Inc., 1 Wash.App. 377, 461 P.2d 567 (1969) (exclusion upheld for drivers under 25 years of age); Royse v. Boldt, 80 Wash.2d 44, 491 P.2d 644 (1971) (exclusion upheld for drivers other than named insured, resident of household, or driver specifically named in policy); Barkwill v. Englen, 57 Wash.2d 545, 358 P.2d 317 (1961) (exclusion upheld for vehicle operated by any person other than named insured or family member).
[13] Wiscomb, 97 Wash.2d at 208, 643 P.2d 441.
[14] Wiscomb, 97 Wash.2d at 208, 643 P.2d 441.
[15] Wiscomb, 97 Wash.2d at 208, 643 P.2d 441.
[16] 115 Wash.2d 107, 795 P.2d 126 (1990).
[17] Tissell, 115 Wash.2d at 114, 795 P.2d 126.
[18] 135 Wash.2d 799, 809, 959 P.2d 657 (1998).
[19] Mendoza, 140 Wash.2d at 664, 999 P.2d 29.
[20] Mendoza, 140 Wash.2d at 670, 999 P.2d 29 (injuries sufficient to warrant felony proceedings against the driver were not covered, but lesser injuries warranting misdemeanor proceedings would be covered).
[21] 60 Wash.2d 535, 540, 374 P.2d 571 (1962).
[22] Ralston, 60 Wash.2d at 540, 374 P.2d 571.
[23] 34 Wash.App. 151, 660 P.2d 307 (1983) (RCW 48.22.030 does not require that UIM insurance be read into an umbrella policy).
[24] 113 Wash.2d 754, 782 P.2d 1063 (1989) (so long as primary automobile insurance provides UIM coverage, excess automobile insurance policies are not statutorily required to provide UIM insurance coverage).
[25] $25,000 for one person or $50,000 per accident. RCW 46.29.090.
[26] Mendoza, 140 Wash.2d at 671, 999 P.2d 29.
[27] Mendoza, 140 Wash.2d at 671, 999 P.2d 29.
[28] Farmers Ins. Co. of Wash. v. Miller, 87 Wash.2d 70, 73, 549 P.2d 9 (1976).
[29] Farmers, 87 Wash.2d at 73, 549 P.2d 9; Continental Volvo, Inc. v. Ross, 17 Wash.App. 316, 317-18, 562 P.2d 1002 (1977).
[30] Diaz v. Nat'l Car Rental Systems, Inc., 143 Wash.2d 57, 67, 17 P.3d 603 (2001).
[31] 100 Idaho 123, 594 P.2d 633 (1979) (owner/passenger killed in single car accident while friend was driving and court determined that plain and ordinary meaning of competing "other insurance" clauses did not conflict but set the priority as first the owner's catastrophe policy and then the driver's primary policy).
[32] Allstate Ins. Co. v. Frank B. Hall & Co. of California, 770 P.2d 1342, 1346 (Colo.App.1989) (driver's primary auto liability policy held to respond to accident before car rental agency's excess policy, despite the primary policy's language describing its coverage as excess to all other collectible insurance, because primary policy exists at a different level of insurance than an umbrella policy and consequently, its "other insurance" clause was intended to refer only to other primary insurance policies, not to other true excess policies (true excess defined as those policies requiring underlying insurance)). See also Illinois Emcasco Ins. Co. v. Continental Casualty Co., 139 Ill.App.3d 130, 93 Ill.Dec. 666, 487 N.E.2d 110 (1985) (driver's primary auto policy required to pay before car owner's umbrella policy because primary policy is at a different level than umbrella policy, rendering the usual rule regarding interpretation of "other insurance" clauses inapplicable); Metropolitan Property and Life Ins. Co. v. Chicago Ins. Co., 479 So.2d 114 (Fla.1985) (primary policies of driver and owner must be exhausted before excess policy is applicable); 8A John Alan Appleman and Jean Appleman, Insurance Law and Practice § 4909.85, p. 452 (1981).
[33] 15 George J. Couch et al, Couch on Insurance § 217:3 (3d ed.2000).
[34] Couch, supra, § 217:3.
[35] Couch, supra, § 220:32.
[36] Couch, supra, § 220:32.
[37] Neither party disputes the equal responsibility of both umbrella policies in light of our holdings in this case. See Mission Ins. Co. v. Allendale Mutual Ins. Co., 95 Wash.2d 464, 626 P.2d 505 (1981).