IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

STATE FARM MUTUAL AUTOMOBILE, )
INSURANCE COMPANY, a foreign )
insurance company, )
                         )
           Appellant, )
                         )
         v. )
                         )
PHYLLIS GLOVER-SHAW and JOHN )
DOE GLOVER-SHAW, wife and )
husband and their marital community; )
CHRISTOPHER SHAW and JANE DOE )
SHAW, husband and wife and their )
marital community; SUZANNA SULJIC )
and JOHN DOE SULJIC, wife and )
husband and their marital community; )
BRITTANY R. DIXON-TAYLOR and )
JOHN DOE DIXON-TAYLOR, wife and )
husband and their marital community; )
JASON TASTAD and JANE DOE )
TASTAD, husband and wife and their )
marital community; SHAWNA J. )
MORGAN and JOHN DOE MORGAN, )
wife and husband and their marital )
community; VICKI THAYER; JASON R. )
HARDER and JANE DOE HARDER, )
husband and wife and their marital )
community; JUSTIN G. MYSER and )
JANE DOE MYSER, husband and wife )
and their marital community; )
AMBER J. CONNER and JOHN DOE )
CONNER, wife and husband and their )
marital community; LEANNE R. )
CAMPBELL and JOHN DOE )

No. 72267-1-I

DIVISION ONE

UNPUBLISHED OPINION

FILED: February 16, 2016

CAMPBELL, wife and husband and )
their marital community, )
)
              Defendants, )
)
       and )
)
TERRY D. KENNEDY, a single man; )
MATTHEW L. THAYER, and )
LYNSEY M. PRICE, a single woman, )
)
             Respondents. )
_____ )

BECKER, J. — State Farm Mutual Automobile Insurance Company sought a judgment declaring that several collisions constituted one accident under its insured's policy. The trial court denied State Farm's motion for summary judgment. We conclude that there are no disputed issues of material fact and that the collisions constituted one accident as a matter of law. We reverse and remand for entry of judgment in favor of State Farm.

## FACTS

On the night of April 1, 2011, Suzanna Suljic was driving drunk southbound on Broadway in Everett, Washington. As Suljic approached the intersection of Broadway and Everett Avenue, she crossed the center lane into the northbound lanes of Broadway and hit George Maxfield's northbound car.

She then swerved into the southbound left turn lane and rear-ended Terry Kennedy's southbound car, which was stopped at a red light waiting to make a left turn onto Everett Avenue. The impact of the collision slammed Kennedy's car forward into the rear end of Matthew Thayer's car. Kennedy's car rotated and hit

2

the front driver's side of Jason Tastad's car, which was traveling southbound on Broadway.

Suljic continued southbound in the northbound lanes of Broadway into the intersection of Broadway and Everett Avenue. She ran the red light and collided head-on with Lynsey Price's northbound car at the south end of the intersection. The impact of this collision caused Suljic's car to rotate and strike Price's car again on the passenger side. Amber Conner, driving northbound behind Price, then rear-ended Price's car. According to State Farm's car collision analysis expert, all of these collisions occurred in about four to five seconds within about 160 feet.

After these collisions, the issue of liability insurance arose. Suljic was driving a car owned by and insured to Phyllis Glover-Shaw. Glover-Shaw's son, Christopher Shaw, had his mother's permission to use the car. Shaw, in turn, allowed Suljic to drive the car. He was a passenger in the car during the collisions. Glover-Shaw's car was insured by State Farm. Her insurance policy provides liability coverage in the amount of $100,000 per accident. Her insurance policy does not define the word accident.

State Farm filed a complaint for declaratory judgment in January 2013, naming all involved drivers and passengers as defendants. State Farm requested a declaration that the numerous collisions that occurred as Suljic approached and entered the intersection of Broadway and Everett Avenue, from Suljic's collision with Maxfield's car to the last collision between Price's and

Conner's cars, constitute one accident for the purposes of liability under Glover-Shaw's insurance policy.

State Farm moved for summary judgment in August 2013. Price, Kennedy, and the Thayers opposed the motion. State's Farm's motion for summary judgment was denied in September 2013.

After summary judgment was denied, the case was assigned to a different judge. Price filed a jury demand. State Farm asserted that there were no contested factual issues for a jury to decide. The court ruled that a jury would decide any factual issues and the court would decide the legal question of how many accidents occurred for insurance policy purposes.

The defendants moved to consolidate State Farm's declaratory judgment action with their related tort action against Suljic for the collisions. The court denied this motion.

State Farm's declaratory action was tried before a jury in June 2014. State Farm presented one witness, a car collision analysis expert named Tim Moebes. He expressed his opinion that the collisions at issue took place over about 160 feet in about four to five seconds. The defendants did not call any witnesses. The jury also considered a book of exhibits including a police report with a description of the collisions and witness statements. At the end of the trial, the jury decided against State Farm by answering no to three special verdict form

questions.[1]

After the trial, both State Farm and the defendants moved for entry of the findings of fact and conclusions of law. The court denied the motions in an order entered on July 3, 2014. In the same order, the court denied State Farm's request for a declaratory judgment that the collisions at issue constituted one accident. But the court also declined to enter a judgment declaring that the collisions constituted more than one accident.

State Farm moved for a new trial. At the same time, defendants asked the court to enter a judgment based on the jury's answers to the special verdict form questions. At a hearing on July 28, 2014, the court denied State Farm's motion for a new trial. The court expressed willingness to enter a judgment if the parties could present an acceptable proposed judgment, but if not, the order of July 3,

---

[1] The special verdict form questions are quoted below. State Farm's appeal challenges these questions as being the wrong ones to ask under the applicable case law, an issue we do not reach.

**QUESTION 1**: Has the plaintiff met its burden of proof that the initial impact of the vehicle driven by Suzanna Suljic and the vehicle driven by George Maxfield was the sole proximate cause of the subsequent collision with the vehicle driven by Terry Kennedy?

. . . .

**QUESTION 2**: Has the plaintiff met its burden of proof that the initial impact of the vehicle driven by Suzanna Suljic and the vehicle driven by George Maxfield was the sole proximate cause of the subsequent collision between the vehicle driven by Suzanna Suljic and the vehicle driven by Lynsey Price?

. . . .

**QUESTION 3**: Has the plaintiff met its burden of proof that the initial impact of the vehicle driven by Suzanna Suljic and the vehicle driven by George Maxfield was the sole proximate cause of the subsequent collision between the vehicle driven by Amber Conner and the vehicle driven by Lynsey Price?

2014, would stand as the final order. None of the parties presented the court with an acceptable proposed judgment at that time.

On July 31, 2014, State Farm filed a notice of appeal with this court. State Farm appealed the September 2013 order denying summary judgment, the order of July 3, 2014, and the jury's special verdict form.

This court notified the parties that the matters being appealed did not amount to a final judgment reviewable under RAP 2.2. State Farm responded by filing a motion in the trial court for entry of a final judgment. On December 3, 2014, the trial court entered a judgment stating that the order of July 3, 2014, and the court's oral rulings on July 29, 2014,[2] constituted the court's final determination of the rights of the parties. Our commissioner ruled that the requirements of RAP 2.2(a) for a nondiscretionary appeal as of right had been satisfied. The appeal proceeds under RAP 2.2(a).

## ANALYSIS

State Farm's first and dispositive argument is that the trial court erred in denying summary judgment.

A denial of summary judgment cannot be appealed following a trial if the denial was based upon a determination that material facts are disputed and must be resolved by the fact finder. Kaplan v. Nw. Mut. Life Ins. Co., 115 Wn. App. 791, 799-800, 65 P.3d 16 (2003), review denied, 151 Wn.2d 1037 (2004). But a summary judgment denial is subject to review if the parties do not dispute any

---

[2] The judgment appears to be referring to the trial court's oral rulings on July 28, 2014.

issues of fact and the decision on summary judgment turned solely on a substantive issue of law. Kaplan, 115 Wn. App. at 799-800.

In denying State Farm's motion for summary judgment, the trial court stated that "material issues of fact are present." The court was not obligated to identify the material issues of fact and did not so do. It is undisputed that the collisions occurred within a distance of 160 feet and within four or five seconds. At oral argument before this court, the parties agreed that the facts presented in the summary judgment record are the same as those presented at trial. None of the parties object to having this court review the denial of State Farm's motion for summary judgment. Under these circumstances, we will review the order denying summary judgment.

We review summary judgment decisions de novo, engaging in the same inquiry as the trial court. Pemco Mut. Ins. Co. v. Utterback, 91 Wn. App. 764, 767, 960 P.2d 453 (1998), review denied, 137 Wn.2d 1009 (1999). A motion for summary judgment may be granted only if there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Utterback, 91 Wn. App. at 767. We construe the facts and reasonable inferences in the light most favorable to the nonmoving party. Utterback, 91 Wn. App. at 767.

State Farm requests a declaration that only one accident occurred for insurance coverage purposes. All injuries or damage within the scope of a single "proximate, uninterrupted, and continuing cause" must be treated as arising from a single accident. Truck Ins. Exch. v. Rohde, 49 Wn.2d 465, 471-72, 303 P.2d 659 (1956).

In Rohde, the driver veered across the center line of the highway into oncoming traffic and in quick succession hit three motorcycles traveling each about 75 feet apart in an echelon formation. Rohde, 49 Wn.2d at 466-67. The driver's car went out of control either before or simultaneously with the first collision and remained out of control until it came to rest after the third collision. Rohde, 49 Wn.2d at 471. There was only one proximate cause for all three collisions—the driver's negligence in losing control of his car and veering into oncoming traffic. Rohde, 49 Wn.2d at 470. Because there was only one proximate, uninterrupted, and continuing cause for all three collisions, our Supreme Court held they constituted only one accident. Rohde, 49 Wn.2d at 470-71.

This court held in Utterback that one accident occurred where a driver lost control of her car while trying to park, jumped the curb, hit a man, backed up several feet, and "'immediately'" lurched forward again and struck the man a second time. Utterback, 91 Wn. App. at 766-67. "The interdependent nature of the two impacts and their continuity and proximity in time and location all require the conclusion that just one accident occurred." Utterback, 91 Wn. App. at 772. The "only reasonable inference on these facts" is that the driver "'never regained a full measure of control over either the car's injury-inflicting potential or the situation in general,'" despite the fact that she reversed direction. Utterback, 91 Wn. App. at 772, quoting Welter v. Singer, 126 Wis. 2d 242, 376 N.W.2d 84, 87 (Ct. App. 1985). Because she never regained control, the only proximate and continuing cause of both impacts was the driver's initial negligence that caused

her to lose control of the vehicle. Utterback, 91 Wn. App. at 772. For this reason, this court concluded that there was only one accident as a matter of law and upheld the grant of summary judgment to the insurance company.

In contrast, a trial court improperly granted summary judgment to the insurance company in Greengo v. Public Employees Mutual Insurance Co., 135 Wn.2d 799, 959 P.2d 657 (1998). In Greengo, two drivers each rear-ended the cars in front of them, resulting in a three-car pile-up. Greengo, a passenger in the middle car, sued her insurance company for payment under her underinsured motorist coverage. Greengo's insurance company moved for summary judgment to uphold the antistacking clause in the policy. The trial court granted the motion and the Court of Appeals affirmed the denial of coverage in an analysis that assumed there was only one accident. Greengo, 135 Wn.2d at 805, 812.

Our Supreme Court reversed, holding that there was a genuine issue of material fact on the issue of how many accidents occurred. The police report stated that both drivers were following too closely. Greengo, 135 Wn.2d at 815. The court reasoned that if both drivers were following too closely, they were each separately negligent. If so, each collision had its own proximate cause and the two collisions would constitute two separate accidents for insurance coverage purposes. Greengo, 135 Wn.2d at 815.

In this case, the respondents do not argue that any driver other than Suljic drove negligently.[3] Therefore, the sole question is whether Suljic regained control of her car at any point during these collisions. If she did, one or more of the collisions may have a separate proximate cause and thus constitute a separate accident for insurance coverage purposes.

It is undisputed that Suljic was driving under the influence of alcohol. Suljic had also recently taken several prescription medications. When she was interviewed following the collisions, Suljic told the police that the car brakes failed and that she "just tried to get in the center lane" because she "thought it would be safe." Suljic's passengers confirmed that she was screaming that the brakes were not working. But a postaccident investigation found no problem with the car's brakes.

In addition, State Farm's car collision analysis expert found it more probable than not that the entire set of collisions occurred in four to five seconds and in approximately 160 feet. Respondents claim that the witness statements cast doubt on the timing and distance of the collisions but they do not demonstrate inconsistency with the expert's findings on these issues. When the nonmoving party fails to controvert relevant facts supporting a summary judgment motion, the facts are considered to have been established. See Cent. Wash. Bank v. Mendelson-Zeller, Inc., 113 Wn.2d 346, 354, 779 P.2d 697 (1989).

---

[3] There was some discussion between the trial judge and the parties' attorneys that Conner may have been following too closely. The respondents assert that Conner was following too closely in the facts section of their brief to this court. But there is no evidence in the record that Conner was in fact following too closely, and the respondents do not present any argument to this court that Conner was negligent.

10

In Utterback, close proximity in time and distance was a relevant factor in our conclusion that just one accident occurred. Utterback, 91 Wn. App. at 772. The distance traveled by Suljic in these collisions is almost exactly the same distance traveled in Rohde, where the collisions constituted one accident. Relying on the facts and expert testimony summarized above, State Farm presented a prima facie case that, like in Rohde and Utterback, the collisions shared one proximate cause—Suljic's initial negligence in driving while drunk and losing control of her car.

After the moving party submits adequate affidavits, the nonmoving party must set forth specific facts that sufficiently rebut the moving party's contentions and disclose that a genuine issue as to a material fact exists. Seven Gables Corp. v. MGM/UA Entm't Co., 106 Wn.2d 1, 13, 721 P.2d 1 (1986).

Defendants below, now respondents on appeal, do not adequately respond to State Farm's contentions with specific facts to show that Suljic regained control of her car. Respondents rely on eyewitness descriptions that Suljic was "weaving" through traffic, "speeding," "hitting" cars and running a red light. They argue that the verbs used by the witnesses establish that Suljic regained control of her car because they prove she acted volitionally. Even when viewed in the light most favorable to the respondents, however, the witness statements do not satisfy the test set forth in Utterback to show that the driver regained a full measure of control over either the car's injury-inflicting potential or the situation in general. Volitional conduct such as turning the steering wheel and stepping on the gas pedal does not equate to regaining control of a car that

11

has veered into the lane of oncoming traffic.  In Utterback, even the fact that the driver volitionally reversed her car before she drove forward again was not enough to show that she regained control.  Utterback, 91 Wn. App. at 771.  In this case, witness statements provide even less evidence that Suljic ever regained control because her car continued forward the entire time.

Moments before the collisions at issue in this case, Suljic hit parked cars in the 2300 block of Broadway.  She was able to regain enough control to drive three more blocks before the collision with Maxfield's car occurred as she approached the intersection of Broadway and Everett Avenue and crossed the center lane.  Respondents argue that it can be inferred therefrom that Suljic remained in control as she went into the intersection.  We disagree.  State Farm concedes that Suljic's collisions with the parked cars on the 2300 block of Broadway constitute a separate accident for insurance coverage purposes.  The issue presented by State Farm's motion is whether Suljic ever regained control from the time she hit Maxfield's car until the second time she hit Price's car.  The fact that she lost and regained control *before* she hit Maxfield's car is irrelevant to the issue to be decided.

Respondents argue that State Farm did not meet its burden to present evidence that Suljic was not in control of her car.  But Suljic's blood alcohol level was above the legal limit.  She had just hit two parked cars three blocks to the north.  She then collided with three more cars as she approached and entered the intersection of Broadway and Everett Avenue.  Her driving was erratic and dangerous, including veering into oncoming traffic.  These facts supply ample

evidence that Suljic was not in control of her car. Respondents argue that drunk drivers can make bad decisions and still be in control of their cars. The record, however, does not support an inference that Suljic exerted control over the situation or the car's injury-causing potential at any time during the collisions at issue.

The facts set forth in State Farm's motion for summary judgment establish that Suljic's negligence in losing control of her car was the sole, uninterrupted proximate cause of all the collisions at issue. Respondents do not rebut State Farm's prima facie case with sufficient facts to disclose the existence of a genuine issue of material fact. Following Utterback and Rohde, we conclude the trial court erred in denying State Farm's motion for summary judgment. In view of our conclusion, we need not consider State Farm's additional assignments of error to the jury instructions and special verdict form.

Reversed and remanded for entry of judgment in favor of State Farm.

Becker, J.

WE CONCUR:

13